John Anthony McBride was indicted for trafficking in cocaine, in violation of § 20-2-80 (2)(a), Code of Alabama 1975, and for trafficking in cannabis, in violation of § 20-2-80 (1)(a), Code of Alabama 1975. The cases were consolidated for trial, McBride was found guilty of each charge, and he was sentenced to a ten-year prison term in each case. In addition he was fined a total of $75,000. Three issues are presented on appeal. *Page 656 
 I
McBride claims that there was no probable cause for the search of his residence. A search warrant was issued by a municipal court judge based upon the following affidavit:
 "Before me, the Honorable H.L. Gillis, Judge, Municipal Court, City of Montgomery, Montgomery County, Alabama, the undersigned being duly sworn, deposes and says that he is a Police Officer in and for the City of Montgomery, Montgomery County, Alabama, and that he has reason to believe, probable cause to believe, and, in fact, does believe that cocaine and marijuana, a controlled substance, is being kept, stored, and concealed within the residence located at 4132, Apartment 241, Carmichael Road, Montgomery, Alabama, wherein resides black male, John Anthony McBride, in violation of the Alabama Uniform Controlled Substances Act of 1971. The facts tending to establish the foregoing grounds for issuance of a daytime search warrant are as follows:
 "That on a previous date in the month of March, this writer met with a confidential and reliable source, hereinafter known as `A.' `A' stated that he has in the past observed large quantities of cocaine and marijuana within the dwelling at 4132, Apartment 241, Carmichael Road, Montgomery, Alabama, wherein resides black male, John Anthony McBride. `A' stated that John Anthony McBride travels to the West Palm Beach, Florida, area and picks up large quantities of cocaine and marijuana. `A' stated that these trips normally take between 22 and 24 hours. `A' stated that when John Anthony McBride returns to Montgomery, he goes directly to his apartment at 4132, Apartment 241, Carmichael Road. `A' stated that McBride then unloads the drugs and carries them into his apartment in large plastic garbage bags. `A' also stated that when McBride makes these trips he always carries someone with him and they always return to his apartment together. `A' also stated that when McBride and the other subject return to the apartment, McBride on some occasion may leave for a period of time and leave the other subject at his apartment. `A' stated that McBride and the subject traveling with him will make the trip in a 1984 Datsun 300 ZX, maroon in color, Tag Number 43G 9241, which is owned by John Anthony McBride.
 "Further probable cause being that `A' has given the affiant information which has led to the recovery of a quantity of marijuana. Further probable cause being that `A' has given the affiant information on numerous occasions which has been proven to be true and correct.
 "Further probable cause being that `A' has given the affiant information against his own penal interest.
 "Further probable cause being that on 3/12/85, the affiant received information that John Anthony McBride was in the process of making a trip to the Florida area and picking up a quantity of cocaine and marijuana. At approximately 12:30 PM, on 3/12/85, surveillance was established on John Anthony McBride's residence at 4132, Apartment 241, Carmichael Road. While surveillance was being conducted, John Anthony McBride and another unknown black male did arrive at 4132 Carmichael Road at approximately 11:00 PM. These subjects were driving a 1984 Datsun 300 ZX, maroon in color, Tag Number 43G 9241, which is, in fact, owned by John Anthony McBride. These subjects (McBride and unknown black male) exited the aforementioned vehicle, at which time McBride was carrying some type of objects and the other black male was carrying what appeared to be several large plastic garbage bags containing some type of materials or objects. These subjects (McBride and unknown black male) then entered Apartment 241, which is located at 4132 Carmichael Road, Fieldcrest Apartments. After remaining in the apartment for a short period, McBride then exited the apartment, entered his vehicle and left the area. In approximately one and one half to two (1 1/2 to 2) hours, McBride then *Page 657 
returned to his apartment. During the times McBride was away from the apartment, surveillance was maintained and there was no activity. No one was observed entering or exiting the apartment. Further probable cause being that the records of the Alabama Power Company show that John Anthony McBride has service at 4132, Apartment 241, Carmichael Road.
 "Further probable cause being that the records of the Montgomery Credit Bureau show that John Anthony McBride resides at 4132, Apartment 241, Carmichael Road.
 "This affidavit is based upon information personally given to the affiant by a reliable source and information known to the affiant.
 "It is made for the purpose of securing a daytime search warrant for the residence of 4132, Apartment 241, Carmichael Road, Montgomery, Alabama.
"Sworn before me this 13th day of March, 1985.
 /s/ L.V. Moore 206 /s/ H.L. Gillis _________________________ _____________________ L.V. Moore, Investigator H.L. Gillis Vice and Narcotics Unit Municipal Judge Montgomery Police Department City of Montgomery Montgomery, Alabama Montgomery, Alabama"
In Thomas v. State, 353 So.2d 54, 56 (Ala.Cr.App.), cert. denied, 353 So.2d 59 (Ala. 1977), this court condemned the use of such vague language as that the informant "has in the pastobserved contraband," commenting that the phrase "`[h]ad observed' could have been any time in the past." (quotingWalker v. State, 49 Ala. App. 741, 743, 275 So.2d 724, 725-26, cert. denied, 290 Ala. 371, 275 So.2d 732 (1973)). A "stale" affidavit which does not pinpoint the time of the informant's observation fails the test established in Aguilar v. Texas,378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v.United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637
(1969). Thomas, supra.
However, in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317,76 L.Ed.2d 527 (1983), the Supreme Court rejected theAguilar-Spinelli test and substituted a "totality of the circumstances" analysis for search warrant affidavits.
 "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for . . . conclud[ing]' that probable cause existed."
462 U.S. at 238-39, 103 S.Ct. at 2332.
Although the Aguilar-Spinelli two-pronged test has been abandoned and not merely refined or qualified, Massachusetts v.Upton, 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721
(1984), "an informant's `veracity,' `reliability' and `basis of knowledge' are all highly relevant in determining the value of his report." Gates, 462 U.S. at 230, 103 S.Ct. at 2327; UnitedStates v. Sorrells, 714 F.2d 1522, 1529 (11th Cir. 1983);United States v. Phillips, 727 F.2d 392, 395 (5th Cir. 1984). Notwithstanding Officer Moore's failure to specify the time of his informant's observation of the contraband, the affidavit provided the magistrate with a substantial basis for concluding that probable cause existed. The informant's veracity was established by the allegation that he had given "information which has led to the recovery of a quantity of marijuana." "Courts have consistently held that an informant's track record [to establish credibility] is sufficiently established by a showing (i) that on one or more prior occasions the informant indicated that a certain object, usually narcotics . . ., are concealed in a certain place, and (ii) that this information was verified as true by a search which uncovered the specified items at the place indicated. This is a sound result. . . ." W. LaFave, 1 Search and Seizure § 3.3, p. 510 (1978).
The allegations that the informant has provided "information on numerous occasions which has been proven to be true and *Page 658 
correct" and has given "information against his own penal interest" are, by themselves, highly ambiguous and furnish no factual basis for an independent judicial determination by the magistrate as to the informant's veracity. They are only the conclusions of the affiant. People v. Gleason, 122 Mich. App. 482, 333 N.W.2d 85 (1983). Although somewhat meaningless when isolated, these two allegations assume significance when considered in conjunction with and when used to corroborate the initial allegation that the informant has provided reliable information. We find that the affidavit contains a sufficient statement of the factual basis of the informant's past performance to satisfy the veracity prong of theAguilar-Spinelli test.
Additionally, the veracity prong was satisfied by partial corroboration of the informant's tip. Although "corroboration of a very few innocent and easily predictable events should not suffice," 1 LaFave § 3.3 at p. 560, it has been recognized that "completely innocent activity can provide sufficient corroboration in some circumstances." United States v. Little,735 F.2d 1049, 1055 (8th Cir. 1984). "Moreover, probable cause does not require certainty of criminal activity, but only probability. [citation omitted] First-hand observations of criminal activity by a reliable informant in conjunction with police corroboration of factual details provides just this probability." United States v. Thompson, 751 F.2d 300, 302 (8th Cir. 1985). Even though the informant does not state how he obtained his information, the "prevailing view" is that the independent verification technique can repair a defect in the "basis-of-knowledge" prong. 1 LaFave § 3.3, at p. 563. Although an informant's veracity and basis of knowledge are "all highly relevant" in determining probable cause, they are not "entirely separate and independent requirements to be rigidly exacted in every case, . . . Rather, . . . they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is `probable cause' to believe that contraband or evidence is located in a particular place." Gates, 462 U.S. at 230,103 S.Ct. at 2327-28. An informant's veracity and basis of knowledge are not independent, and are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Gates, 462 U.S. at 233, 103 S.Ct. at 2329. Here, the police surveillance of McBride's activities and their partial verification of the informant's tip supplied a sufficient reason for the judge to believe that there was a fair probability that contraband would be found in McBride's residence. In short, applying the Gates "totality of the circumstances" test to the facts presented to the magistrate here leads to the conclusion that the affidavit outlined sufficient probable cause. United States v. Francesco,725 F.2d 817, 823 (1st Cir. 1984); United States v. Lessard,720 F.2d 1000, 1001-02 (8th Cir. 1983).
Moreover, even if the affidavit were defective and the warrant invalid, the fruits of the search were not due to be suppressed because of the officers' good-faith, objectively reasonable reliance on a warrant issued by a detached and neutral magistrate. United States v. Leon, 468 U.S. 897,104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." United States v. Leon, 468 U.S. at 921,104 S.Ct. at 3420. The affidavit in this case cannot be characterized as a "bare-bones" affidavit like the one involved in Crittenden v.State, 476 So.2d 632 (Ala. 1985).
 II
The Montgomery police officer who executed the search warrant testified, over *Page 659 
defense objection, that he asked for and received from McBride the combination to a locked briefcase which was found to contain cocaine. McBride insists that his statement revealing the combination to the briefcase was an incriminating response inadmissible in the absence of a Miranda predicate.
The admission of McBride's statement does not constitute reversible error. The officer's inquiry of McBride was made pursuant to the statutory mandate of § 15-5-9, Code of Alabama 1975, which provides the following:
 "To execute a search warrant, an officer may break open any door or window of a house, any part of a house or anything therein if after notice of his authority and purpose he is refused admittance." (Emphasis added.)
As this court observed in Terry v. State, 397 So.2d 217, 220
(Ala.Cr.App.), cert. denied, 397 So.2d 223 (Ala. 1981), the law does not require officers to break into a suspect's property without first notifying him of their intention and giving him a chance to cooperate. The officer's question and McBride's answer regarding the combination to the briefcase, therefore, merely facilitated the execution of the warrant. While this statutory authorization would not justify a violation of a suspect's constitutional rights, the officer's inquiry does not fall within the custodial interrogation protections afforded by the Miranda rule.
 "[T]he Miranda rule falls far short of encompassing all acts and statements of a defendant. Shy v. State, 234 Ga. 816, 218 S.E.2d 599 (1975). Threshold inquiries of the type to which appellant apparently objects do not fall within the custodial interrogation protections afforded by the Miranda
rule. Shy v. State, supra; Westley v. State, 143 Ga. App. 344, 238 S.E.2d 701 (1977).
 "Here, investigating officers merely asked the appellant where the marijuana was hidden, in order to avoid `tearing up the house.' Appellant voluntarily led the officers to the hallway, where he handed them the marijuana. The situation did not require Miranda
warnings."
Birge v. State, 143 Ga. App. 632, 239 S.E.2d 395, 400 (1977).
Even if the admission of McBride's statement were error, it was harmless. A.R.A.P. 45. The fact that McBride knew the combination to the briefcase tended to prove that he either owned or exercised dominion and control over the property — a matter not in dispute and fully established by other evidence before the jury.
 III
McBride argues that the following references in the prosecutor's closing argument were impermissible comments on his failure to testify:
 "I ask you just to evaluate the evidence, evaluate the lack of evidence presented by the Defense. No evidence of what his employment was. The State put on evidence that we were able to obtain as to his employment. The Defendant put on no evidence of employment."
. . . .
 "MS. BOYD [Defense counsel]: I am going to object at this point to reference to the Defendant's failure to put on any evidence and move to strike and ask for a mistrial. That was an improper reference to his Constitutional right not to present any evidence.
 "THE COURT: I am going to tell the Jury about the law.
 (At this time, the following was had and done of Record in the presence and hearing of the jury in open Court:)
 "THE COURT: Ladies and gentlemen, the law says that the State has to prove somebody is guilty beyond a reasonable doubt and somebody does not have to prove their innocence. And the State must prove guilt to you beyond a reasonable doubt. And I will discuss that with you. And just what you contend the facts showed, please, sir. And I overrule your motion."
 "[Continued closing argument by Assistant District Attorney:] . . . You know, Ms. Boyd talked about burden of proof. *Page 660 
Burden on the State. And you know, the State has presented evidence here, it is the second day of it, and it is easy for her to sit back and poke holes in the State's case and keep out the diagram that was offered so that you could understand what was going on without having someone to tell you. It is easy for her to keep that out so that you cannot understand what happened. It is easy to sit back. The State has the burden of proof, but the Defense has the same opportunity to present evidence.
 "MS. BOYD: Your Honor, may we approach the bench, Your Honor?
"MR. PIERSON: To weigh the evidence.
"MS. BOYD: Your Honor, may we approach the bench?
 (At this time, an at-bar discussion was had out of the hearing of the Jury as follows:)
 "MS. BOYD: Your Honor, this is the second time that there has been reference to the Defendant's failure to produce evidence. I just think that this is . . .
"THE COURT: I sustain it. Let's move along."
At the end of the State's closing argument, defense counsel renewed her objection and again moved for a mistrial. The trial court then repeated the following to the jury:
 "THE COURT: I sustained your objection, and I will tell the Jury again, and I think I did tell the Jury earlier that somebody does not have to prove their innocence. The State has to prove they are guilty. All of you agree with that?
"(Jurors indicating.)
"THE COURT: Anybody that does not agree with that?
"(Jurors indicating.)
 "THE COURT: Can all of you try this case based on that principle of law?
"(Jurors indicating.)
 "THE COURT: All right. I overrule your motion for a mistrial."
The apparent conflict over what test should govern prosecutorial comments directed at a defendant's failure to testify, Jackson v. State, 414 So.2d 1014, 1022 (Ala.Cr.App. 1982), has been resolved.
 "In a case in which there has been a direct reference to a defendant's failure to testify and the trial court has not acted promptly to cure that comment, the conviction must be reversed. Whitt [v. State], 370 So.2d [736] at 739. In a case in which there has been only an indirect reference to a defendant's failure to testify, in order for the comment to constitute reversible error there must be a virtual identification of the defendant as the person who did not become a witness. Ex parte Yarber, 375 So.2d 1231, 1234 (Ala. 1979)."
Ex parte Williams, 461 So.2d 852, 854 (Ala. 1984). "Before the State's comment will be interpreted as an improper comment upon the failure of a defendant to testify, there must be virtually direct reference to the defendant alone as the individual who has not become a witness." Griffin v. State, 393 So.2d 523, 528
(Ala.Cr.App. 1981), quoted in Ex parte Wilhite, 485 So.2d 787
(Ala. 1986).
Here, the prosecutor's comments were permissible allusions to the strength of the State's case. In Welch v. State, 263 Ala. 57, 81 So.2d 901 (Ala. 1955), the prosecutor's comment that "he had a good case and the defense had not offered any evidence" was similar to the State's reference here to the unrebutted evidence of the defendant's employment. In finding no error, the Welch court relied upon Littlefield v. State, 36 Ala. App. 507,512-13, 63 So.2d 565, cert. denied, 258 Ala. 532,63 So.2d 573 (1952).
 "The remark of the State's attorney was no more than a comment that a certain phase of the State's evidence was uncontradicted. Certainly the State's Attorney should be permitted to comment on the character of the evidence presented by the State and its strength. That certain evidence is uncontradicted tends to show its strength. . . . *Page 661 
 "We find nothing in the questioned remark removing it from the general rule that statements by a prosecutor to the effect that evidence for the State is undenied or uncontradicted does not violate a statute prohibiting comments on the defendant's failure to testify."
Moreover, even if the remarks in the case before us were deemed indirect comments on the defendant's failure to take the stand, they were cured by the trial judge's instructions to the jury. "An improper remark may be rendered `innocuous' where the thrust of the remark is indirect and the trial court sustains the objection of defense counsel and merely instructs the jury not to consider the remark. Tillis v. State, 292 Ala. [521] at 523, 296 So.2d [892] at 894 [1974]." Nix v. State,370 So.2d 1115, 1117 (Ala.Cr.App.), cert. denied, 370 So.2d 1119 (Ala. 1979). Here, the court's further action of "determining that the prosecutor's remark would be disregarded by each juror and his instructions to the jury support the finding that any harmful or prejudicial taint or effect was cured." Nix v.State, 370 So.2d at 1117.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.