On May 23, 2003, Charles Hollis Harrelson III pleaded guilty to first-degree theft of property, a violation of § 13A-8-3(a), Ala. Code 1975. The trial court sentenced him, as a habitual offender, to 10 years, but suspended his sentence pending the completion of community service and took under advisement his application for probation. See § 13A-5-9(a)(2), Ala. Code 1975. This appeal followed. *Page 1238 
Before pleading guilty, Harrelson filed a motion to suppress the evidence of the stolen goods found on his property; he argued that the affidavit underlying the search warrant executed on his property was "deficient on its face" and "entirely devoid of any evidence of probable cause for the issuance of a search warrant." (R. 14.) The trial court conducted a hearing, during which Harrelson argued, among other things, that there was "[a]bsolutely no evidence given today or in this affidavit . . . about when the items were seen [by the informant]." (R. 35.) On May 7, 2003, the trial court denied the motion in a detailed written order. On May 23, 2003, before entering his plea of guilty, Harrelson reserved this argument for appellate review. (R. 45.)
On appeal, Harrelson argues that, although the affidavit contained several dates, it is deficient because it does not refer to the exact time and day the informant saw the stolen goods on Harrelson's property.[1] Because the evidence presented at the hearing on the motion to suppress consisted of undisputed testimony, we review de novo the trial court's decision to deny the motion to suppress. See Vinson v. State,843 So.2d 229, 231-32 (Ala. 2001).
The "Application and Affidavit for Search Warrant" contained the following passages:
 "THE FOLLOWING PERSON/PLACE: The residence of Charles Hollis Harrelson III, alias, a wood-sided mobile home located at 918 Bufford Rd. Lot 5 Macon County, Alabama to include the curtilage and any outbuildings contained therein and the open-faced barn structure located east of the residence.
 "FOR THE FOLLOWING PROPERTY: Any and all property belonging to Auburn University i.e., tools, tires, construction equipment, air conditioning units, etc. Any documentation pertaining to the sale of said stolen property."
(C. 17-1.)
 "On 07.11-02 at 0730 hours[,] officers with the Auburn University Police Department received a report of several vehicle tires that were stolen from a locked parking area at the Auburn University Facilities Division. Supervisory personnel named Charles Harrelson as a possible suspect. Mr. Harrelson is an employee of the Facilities Division for Auburn University and often works the midnight shift on some weekends. Surveillance was established on days when Mr. Harrelson was scheduled to work. Officers conducting surveillance on July 20, 2003, observed Mr. Harrelson use the gas pumps designated for University vehicles only to put gas in his personal vehicle. A misdemeanor warrant for Theft of Property Third Degree is currently pending for this incident. On August 9, 2002, information was received from a confidential informant indicating that Mr. Harrelson was responsible for the aforementioned tire thefts. The informant advised that Mr. Harrelson had `tens of thousands of dollars worth' of Auburn University property at his residence. The informant also advised that he would drive to his residence in an *Page 1239 
Auburn University Facilities truck during his working hours and drop off items possibly belonging to Auburn University. The informant admitted having personal knowledge Mr. Harrelson had sold tires to individuals that were known to be stolen from Auburn University. The informant stated that Mr. Harrelson had air-conditioning units, ladders, tools, and other property at his residence that were thought to be stolen from Auburn University. Information was also received from the informant indicating that the suspect stored some of the stolen property in an open-faced barn structure located approximately 1/4 mile east of the suspect's residence on the left side of the road. The barn is described as a brown wooden structure with an open area facing north. The credibility of the informant has been verified by Lt. Alex Smith of the Alabama Marine Police. Lt. Smith was previously employed with the Auburn Police Department and advised that this individual provided credible information on several criminal matters which established reliability."
(C. 17.) The affidavit was sworn on August 9, 2002. The warrant was issued the same day.
As his only legal ground, Harrelson cites Nelms v. State,568 So.2d 384 (Ala.Crim.App. 1990), in support of his argument. InNelms, the Court held a search warrant to be invalid based on the following facially deficient affidavit:
 "`And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: That within the last seventy-two hours a confidential police informant, who has provided information to the affiant in the past that led to an arrest, stated to the affiant that they have seen Crack-Cocaine in the residence of Tommie Lee Nelms, alias, located at 625 Westview Drive, Auburn, Lee County, Alabama.' (State's and Defendant's Exhibit # 1.)"
568 So.2d at 385 (emphasis in original). The Court held, "There is absolutely no reference to the date or time when the narcotics were observed by the informant. Thus, the affidavit was defective and was insufficient to support the issuance of the search warrant in this case." Id. at 386 (emphasis added). Seealso Lewis v. State, 589 So.2d 758 (Ala.Crim.App. 1991). InNelms, as in Lewis, the affidavit provided that the informant said that he had at some time seen drugs at the defendant's home, that is, the presence of drugs had been a fleeting, one-time occurrence.
 "Whether the circumstances recited in an affidavit offered in support of an application for a search warrant are such that the probable cause that might once have been demonstrated by them has grown `stale' is a matter that `must be determined by the circumstances of each case.' Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932).
 "`Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.'
 "United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972)."
Vinson v. State, 843 So.2d 229, 233 (Ala. 2001). In this case, the affidavit provides that the informant said that Harrelson, at the time of the execution of the affidavit, had stolen goods stored in a building on his property, that is, the presence of the stolen goods was ongoing at the time of *Page 1240 
the execution of the affidavit. As opposed to absolutely no reference to the date or time, as was the problem in Nelms andLewis, the affidavit in this case contained not only a general time frame, but also it provided that at the moment of the execution of the affidavit Harrelson was in possession of the stolen goods.
In Vinson, the Alabama Supreme Court evaluated the warrant issued in that case and the supporting affidavit according to the circumstances of that case. An explanation for the genesis of that "totality of the circumstances" approach can be found inMcBride v. State, 492 So.2d 654 (Ala.Crim.App. 1986). The affidavit underlying the warrant in McBride, in terms of staleness, contained only the statement that the informant "has in the past observed" contraband in McBride's home.492 So.2d at 656. The Court, applying a "totality of the circumstances" test, held the affidavit to be sufficient, reasoning:
 "In Thomas v. State, 353 So.2d 54, 56
(Ala.Cr.App.), cert. denied, 353 So.2d 59 (Ala. 1977), this court condemned the use of such vague language as that the informant `has in the past observed contraband,' commenting that the phrase `"[h]ad observed" could have been any time in the past.' (quoting Walker v. State, 49 Ala.App. 741, 743, 275 So.2d 724, 725-26, cert. denied, 290 Ala. 371, 275 So.2d 732 (1973)). A `stale' affidavit which does not pinpoint the time of the informant's observation fails the test established in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723
(1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Thomas, supra.
 "However, in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court rejected the Aguilar-Spinelli test and substituted a `totality of the circumstances' analysis for search warrant affidavits.
 "`The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.'
"462 U.S. at 238-39, 103 S.Ct. at 2332.
 "Although the Aguilar-Spinelli two-pronged test has been abandoned and not merely refined or qualified, Massachusetts v. Upton, 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721 (1984), `an informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of his report.' Gates, 462 U.S. at 230, 103 S.Ct. at 2327; United States v. Sorrells, 714 F.2d 1522, 1529 (11th Cir. 1983); United States v. Phillips, 727 F.2d 392, 395 (5th Cir. 1984). Notwithstanding Officer Moore's failure to specify the time of his informant's observation of the contraband, the affidavit provided the magistrate with a substantial basis for concluding that probable cause existed. The informant's veracity was established by the allegation that he had given `information which has led to the recovery of a quantity of marijuana.' `Courts have consistently held that an informant's track record [to establish credibility] is sufficiently established by a showing (i) that on one or more prior occasions the informant indicated that a certain object, usually narcotics . . ., are concealed in a certain place, and (ii) that this information was verified as true by *Page 1241 
a search which uncovered the specified items at the place indicated. This is a sound result. . . .' W. LaFave, 1 Search and Seizure § 3.3, p. 510 (1978).
 "The allegations that the informant has provided `information on numerous occasions which has been proven to be true and correct' and has given `information against his own penal interest' are, by themselves, highly ambiguous and furnish no factual basis for an independent judicial determination by the magistrate as to the informant's veracity. They are only the conclusions of the affiant. People v. Gleason, 122 Mich.App. 482, 333 N.W.2d 85 (1983). Although somewhat meaningless when isolated, these two allegations assume significance when considered in conjunction with and when used to corroborate the initial allegation that the informant has provided reliable information. We find that the affidavit contains a sufficient statement of the factual basis of the informant's past performance to satisfy the veracity prong of the Aguilar-Spinelli test.
 "Additionally, the veracity prong was satisfied by partial corroboration of the informant's tip. Although `corroboration of a very few innocent and easily predictable events should not suffice,' 1 LaFave § 3.3 at p. 560, it has been recognized that `completely innocent activity can provide sufficient corroboration in some circumstances.' United States v. Little, 735 F.2d 1049, 1055 (8th Cir. 1984). `Moreover, probable cause does not require certainty of criminal activity, but only probability. [citation omitted] First-hand observations of criminal activity by a reliable informant in conjunction with police corroboration of factual details provides just this probability.' United States v. Thompson, 751 F.2d 300, 302 (8th Cir. 1985). Even though the informant does not state how he obtained his information, the `prevailing view' is that the independent verification technique can repair a defect in the `basis-of-knowledge' prong. 1 LaFave § 3.3, at p. 563. Although an informant's veracity and basis of knowledge are `all highly relevant' in determining probable cause, they are not `entirely separate and independent requirements to be rigidly exacted in every case, . . . Rather, . . . they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.' Gates, 462 U.S. at 230, 103 S.Ct. at 2327-28. An informant's veracity and basis of knowledge are not independent, and are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.' Gates, 462 U.S. at 233, 103 S.Ct. at 2329. Here, the police surveillance of McBride's activities and their partial verification of the informant's tip supplied a sufficient reason for the judge to believe that there was a fair probability that contraband would be found in McBride's residence. In short, applying the Gates `totality of the circumstances' test to the facts presented to the magistrate here leads to the conclusion that the affidavit outlined sufficient probable cause. United States v. Francesco, 725 F.2d 817, 823 (1st Cir. 1984); United States v. Lessard, 720 F.2d 1000, 1001-02 (8th Cir. 1983)."
McBride, 492 So.2d at 657-58 (emphasis in original). *Page 1242 
The same is true in this case. Notwithstanding the officer's failure to specify the time of the observation of the stolen goods by the informant, the affidavit provided the magistrate with a substantial basis for concluding that probable cause existed. The informant's veracity was established by the allegation the his credibility was verified by Lt. Alex Smith of the Alabama Marine Police. Lt. Smith alleged that he knew the informant from having worked with the Auburn Police Department and that the informant had "provided credible information on several criminal matters which established reliability." Additionally, the affidavit contained information that partially corroborated the informant's allegations in the form of the allegation that Harrelson already had a misdemeanor warrant pending against him regarding the theft of other property from the University, that is, University gasoline for his personal vehicle. The pending warrant was based on the observations of other police officers. Also, the time between the issuance of the warrant and its execution was short; the warrant was issued at 8:20 p.m., and the search was initiated first thing the next morning. See Vinson v. State, 843 So.2d 229 (Ala. 2001). Finally, the plain meaning of the statement in the affidavit that reads, "The informant stated that Mr. Harrelson had air-conditioning units, ladders, tools, and other property at his residence that were thought to be stolen from Auburn University," indicates that, as of the date of the affidavit, the stolen goods were at that point in time on Harrelson's property. That is, the language used in the affidavit indicates that there was, at the time the affidavit was sworn to, facts indicating criminal activity "of a protracted and continuous nature" on Harrelson's property. Vinson, 843 So.2d at 233. Taking into consideration the totality of the circumstances presented here, we conclude that police surveillance of Harrelson's related activities, coupled with the alleged reliability of the informant, indicates that the detailed affidavit in this case provided sufficient probable cause for the magistrate to issue the warrant.
For the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
[1] On appeal, Harrelson also takes issue with that portion of the trial court's order denying his motion to suppress wherein it states that law enforcement officers saw the stolen goods on Harrelson's property before attempting to secure a warrant. Harrelson did not first take issue with that statement in the trial court; therefore, his argument as to it is not properly before this Court. Moreover, we do not rely on that particular statement by the trial court in reaching our conclusion to affirm Harrelson's conviction and sentence; therefore, his argument is also moot.