15 So.3d 489 (2008)
Ex parte Jeff GREEN
In re Jeff Green
v.
State of Alabama.
1070388.
Supreme Court of Alabama.
July 18, 2008.
Rehearing Denied September 19, 2008.
*490 George L. Beck, Jr., and Chad W. Bryan of Capell & Howard, P.C., Montgomery, for petitioner.
Troy King, atty. gen., and Robin D. Scales, asst. atty. gen., for respondent.
WOODALL, Justice.
Jeff Green sought certiorari review of a judgment of the Court of Criminal Appeals, which affirmed a judgment of the Houston Circuit Court denying Green's petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P. Green's Rule 32 petition sought relief from convictions for the unlawful manufacturing and possession of a controlled substance on the ground that his trial counsel was ineffective. We reverse and remand.

I. Factual Background
Green's arrest and convictions arose out of a warrant executed for the search of a residence occupied by Green and three other individuals. The warrant was issued by a Houston County district judge upon the affidavit of Officer Thomas Flathman; Officer Flathman's affidavit stated, in pertinent part:
"I have probable cause and do believe that located at ____ Hubbard Rd. Wicksburg Houston County Alabama, there is now being concealed certain property namely Methamphetamine and that the following facts tend to establish the facts thereof: I am Off. Thomas Flathman of the Dothan Police Department and I have received information from a confidential informant that Jeff Green is manufacturing and selling methamphetamine inside of the residence and in the shed beside of the residence. The confidential informant also stated that Paula Anderson resides *491 at the residence. ____ Hubbard Road is the address Anderson used on September 21st 2002 when Off. Elkins arrested her for a felony narcotics violation. Both Green and Anderson have prior arrests for narcotics violations. Dothan Swat team snipers have observed continuous foot traffic between the residence and the shed. They have also smelled a strong acidic chemical odor coming from the property that is consistent with the manufacture of methamphetamine.
"Affiant shows that, based on the above and foregoing facts and information, affiant has probable cause to believe that the above described property is concealed upon the aforesaid premises and is subject to seizure and makes this affidavit so that a warrant may issue to search the said premises."
The judge signed the warrant at his residence at 12:08 a.m.
Hours after the warrant was issued, Officer Flathman and at least three other police officers searched the shed, where they discovered and seized what has been described as a "methamphetamine lab." A search of the residence yielded various smoking devices and a plastic container that tested positive for methamphetamine residue. Green was indicted for first-degree manufacturing of methamphetamine in violation of Ala.Code 1975, § 13A-12-218 ("the manufacturing charge"), and possession of methamphetamine in violation of Ala.Code 1975, § 13A-12-212 ("the possession charge").
At Green's trial, his counsel did not challenge the sufficiency of the search warrant or its supporting affidavit, nor did counsel move to suppress the evidence discovered as a result of the search. Green was convicted on both charges and was sentenced to 25 years' imprisonment and 5 years' imprisonment for the manufacturing charge and the possession charge, respectively, with the sentences to run consecutively. He appealed. The Court of Criminal Appeals affirmed the convictions and sentences, and this Court denied Green's petition for certiorari review.
On September 23, 2005, Green filed in the circuit court a petition for postconviction relief under Rule 32, Ala. R.Crim. P. He sought to set aside his convictions on the ground that, among other things, he was denied the effective assistance of counsel guaranteed by the Alabama Constitution and the United States Constitution by his counsel's failure to challenge the validity of the search warrant and the admissibility of the evidence seized during its execution.
The circuit court held an evidentiary hearing at which Officer Flathman testified. At that hearing, the following colloquy occurred:
"Q. [By Green's counsel:] Other than what was on the four corners of [the search-warrant affidavit], did you present to the judge any other information? After you obviously apologized for the lateness of the hour, did you present any other material facts to him?
"A. [By Officer Flathman:] I don't recall."
(Emphasis added.)
The circuit court denied Green's Rule 32 petition, and he appealed. The Court of Criminal Appeals affirmed the denial in an unpublished memorandum, Green v. State (No. CR-05-1597, September 21, 2007), 14 So.3d 196 (Ala.Crim.App.2007)(table), and Green filed this petition for certiorari review in this Court. We granted his petition to consider whether the decision of the Court of Criminal Appeals conflicts with its prior decisions in Lewis v. State, 589 So.2d 758 (Ala.Crim.App.1991), Nelms v. State, 568 So.2d 384 (Ala.Crim.App.1990), *492 and Thomas v. State, 353 So.2d 54 (Ala. Crim.App.1977), regarding the sufficiency of an affidavit supporting a search warrant. We hold that it does.

II. Discussion
To obtain postconviction relief on a claim of ineffective assistance of counsel, a defendant must prove "(1) that counsel did not provide reasonably effective assistance and (2) that counsel's deficient performance prejudiced the petitioner." Ex parte Land, 775 So.2d 847, 850 (Ala.2000) (applying the rule set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Counsel's "performance [is] measured against an `objective standard of reasonableness.'" Rompilla v. Beard, 545 U.S. 374, 380, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)(quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052). "[A] determination of the reasonableness of counsel's actions must be determined on a `case-by-case' basis." Emmett v. Kelly, 474 F.3d 154, 167 (4th Cir. 2007). To prevail on an ineffective-assistance-of-counsel claim, both prongs of the Strickland test must be met. Altherr v. State, 911 So.2d 1105, 1107 (Ala.Crim.App. 2004).[1]
The Fourth Amendment to the United States Constitution provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." Thus, "[a] search warrant may only be issued upon a showing of probable cause that evidence or instrumentalities of a crime or contraband will be found in the place to be searched." United States v. Gettel, 474 F.3d 1081, 1086 (8th Cir.2007). Moreover, "`[s]ufficient evidence must be stated in the affidavit to support a finding of probable cause for issuing the search warrant,' and `[t]he affidavit must state specific facts or circumstances which support a finding of probable cause[;] otherwise the affidavit is faulty and the warrant may not issue.'" Ex parte Parker, 858 So.2d 941, 945 (Ala.2003) (quoting Alford v. State, 381 So.2d 203, 205 (Ala.Crim.App.1979)).
"A probable cause determination is made after considering the totality of the circumstances." Gettel, 474 F.3d at 1086. To pass constitutional muster, "the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued." United States v. Greany, 929 F.2d 523, 524-25 (9th Cir.1991) (emphasis added). Thus, "[t]he police will ... encounter problems of `staleness' of their information if they delay too long in seeking a search warrant." United States v. Watson, 423 U.S. 411, 450 n. 14, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Green contends that the warrant authorizing the search of his residence was not based on probable cause, because, he argues, Officer Flathman's affidavit, which provided the basis for the warrant, "failed to establish that the information being provided [by the affiant] was current rather than stale or remote." Green's brief, at 10. According to Green, Flathman's affidavit differs in no material respect from the supporting affidavits deemed to be fatally deficient in Nelms, Lewis, and Thomas, supra. Although the Court of Criminal Appeals found the affidavit sufficient, we agree with Green.
*493 All three cases cited by Green involved motions to suppress evidence of controlled substances discovered in the execution of search warrants supported by affidavits lacking information sufficient to determine whether the information provided to, and by, the affiant was current. In Thomas, heroin was found pursuant to a search warrant executed on March 14, 1973. Thomas, 353 So.2d at 55. One of the police officers who executed the warrant was the affiant, who had stated, in pertinent part:
"`On February 23rd, 1973, a search warrant was served at 2624 Tempest Drive, Apartment H, residence of Marie Haley. A quantity of heroin was seized on this date. On the afternoon of March 6th, 1973, an undercover police officer purchased a quantity of heroin from Eric Rogers at 2624 Tempest Drive, Apartment H. On March 13th, 1973, I received information from a reliable informant who has given me information over a period of the last 30 days which has led to narcotic cases being made with trials pending. This informant gave me information that he had observed heroin being used and sold at 2624 Tempest Drive, Apartment H, Birmingham, Alabama.'"
353 So.2d at 56 (emphasis added). In holding that the defendant's motion to suppress the heroin found during the search should have been granted, the Court of Criminal Appeals stated:
"The affidavit is deficient because it fails to show that the information received from the informant was fresh as opposed to being remote. ... The affidavit stated that the informant `had observed' heroin being used and sold from the premises described. The affidavit does not state the date or the time the informant allegedly observed the heroin on the premises. ...
". . . .
"The fact that heroin was previously seized on February 23, 1973, at 2624 Tempest Drive, Apartment H, did not establish probable cause to believe that heroin was on the premises three weeks later.
"Also, the fact that on March 6, 1973, an undercover police officer purchased a quantity of heroin from Eric Rogers on the premises did not establish probable cause to believe that a week later such narcotic would be still found thereon. Seven days is a considerable length of time in which to remove heroin from the premises or dispose of it in another fashion. Such makes for a stale warrant."
353 So.2d at 56 (emphasis added).
The search warrant challenged in Lewis was based on an affidavit that stated, in pertinent part: "`[W]ithin the last seventy-two hours, a reliable, confidential informant advised this affiant that said informant had been at the above described residence and observed a quantity of powder cocaine.'" Lewis, 589 So.2d at 759 (emphasis added). In reversing the trial court's denial of the defendant's motion to suppress evidence of a controlled substance found during the search, the Court of Criminal Appeals explained that the affidavit was constitutionally "deficient, because it fail[ed] to refer to the date when the informant allegedly observed cocaine at the [defendant's] residence." 589 So.2d at 759 (emphasis added).
Similarly, in Nelms, a controlled substance was found in executing a search warrant obtained on the basis of an affidavit that stated, in pertinent part:
"`And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: That within the last seventy-two hours a confidential police informant, who has provided information to the affiant in the *494 past that led to an arrest, stated to the affiant that they [sic] have seen Crack-Cocaine in the residence of Tommie Lee Nelms, alias, located at 625 Westview Drive, Auburn, Lee County, Alabama.'"
Nelms, 568 So.2d at 385 (emphasis added in Nelms). In reversing the trial court's denial of the defendant's motion to suppress evidence of the controlled substance, the Court of Criminal Appeals stated:
"The affidavit in this case is [constitutionally] deficient because it does not state when the drugs were seen by the informant at the [defendant's] residence. The words `within the last seventy-two hours' refer to when the informant told this information to the affiant, not to when the informant observed the narcotics in the [defendant's] residence. There is absolutely no reference to the date or time when the narcotics were observed by the informant. Thus, the affidavit was defective and was insufficient to support the issuance of the search warrant in this case."
568 So.2d at 386 (emphasis added).
The dispute in this case centers on the following three statements in Flathman's affidavit: (1) "I have received information from a confidential informant that Jeff Green is manufacturing and selling methamphetamine inside of the residence and in the shed beside of the residence"; (2) "Dothan Swat team snipers have observed continuous foot traffic between the residence and the shed"; and (3) "[t]hey have also smelled a strong acidic chemical odor coming from the property that is consistent with the manufacture of methamphetamine." To be sure, the first statement contains a verb tense that is ostensibly the present tense, i.e., "is manufacturing and selling." (Emphasis added.) However, any present-tense aspect of this phrase is qualified by, and subject to, the introductory clause, "I have received information" (emphasis added), which indicates an action in the past.
The Court of Criminal Appeals has explained in regard to the phrase "had observed" that such statements in affidavits evidencing past actions are ineffective. This is so, because the allegedly illegal activity "`could have been any time in the past.'" Thomas, 353 So.2d at 56 (quoting Walker v. State, 49 Ala.App. 741, 743, 275 So.2d 724, 725-26 (Ala.Crim.App.1973)). When "`[t]he informer [does] not tell the officer-affiant the date or time he allegedly observed the [activity] on the premises,'" then "`[t]here is nothing in the affidavit which hints of time except the use of the past tense in connection with the informant's... report to the affiant.'" 353 So.2d at 56 (quoting Walker, 49 Ala.App. at 743, 275 So.2d at 726)(emphasis added).
Similarly, nothing in Officer Flathman's affidavit reveals when the tip from the informant was received or when the alleged activity was observed. The most that can be gained from that portion of the affidavit is that  at some indefinite time in the past  an anonymous individual allegedly learned of a methamphetamine operation involving Green at the address indicated on the search warrant. Because Officer Flathman's affidavit contained no chronological reference in which to place the informant's alleged observation of the methamphetamine operation, it afforded no basis on which to determine whether "the object of the search [was] probably on the premises to be searched at the time the warrant [was] issued." Greany, 929 F.2d at 525.
The information supplied to Officer Flathman by the "Dothan SWAT team snipers" is defective for the same reasons. The affidavit provides no information as to when the SWAT-team snipers were deployed. It relates only what the snipers allegedly "have ... observed" and "have *495 ... smelled" at some indefinite time in the past. Lacking a relevant time frame, the statements of the snipers provided no basis on which to determine whether a methamphetamine operation was ongoing at the residence at the time the warrant was issued. For these reasons, the affidavit fails to state facts or circumstances that would support a finding of probable cause within the framework of Thomas, Nelms, and Lewis.
Even if an affidavit is facially defective for the reasons just discussed, its deficiency may be cured by information an affiant supplied to the issuing authority in addition to the assertions in the affidavit. However, no such circumstance is presented in this case, because Officer Flathman testified at the hearing on Green's Rule 32 petition that he "[did]n't recall" telling the district judge who issued the warrant anything "[o]ther than what was on the four corners of the [search-warrant affidavit]." In that respect, also, this case is on point with Nelms and Lewis.
Both of those cases involved, as does this case, allegations that the supporting affidavits lacked a chronological context by which to assess the timeliness of the search warrant. Nelms, 568 So.2d at 386; Lewis, 589 So.2d at 759. In both cases, the State attempted to cure the deficiency of the affidavits with testimony of the affiants regarding facts they had orally communicated to the judges who issued the warrants. Nelms, 568 So.2d at 386-87, Lewis, 589 So.2d at 759. In both cases, as in this case, the affiants testified that they could not recall what they had told the issuing judge as to when the informant had observed the illegal activity. In both cases, the Court of Criminal Appeals held, contrary to the holding in its unpublished memorandum in this case, that such oral testimony is insufficient to cure the deficiency of a supporting affidavit.
Finally, the State argues that "[e]ven if the affidavit was [insufficient to establish probable cause], the evidence was admissible under the `good-faith exception' to the exclusionary rule." The State's brief, at 22. Similar arguments based on materially indistinguishable facts were made by the State and rejected in Nelms and Lewis.
The Court of Criminal Appeals in Nelms, in particular, stated:
"[T]he only possible way to justify the admission of the evidence seized pursuant to the search warrant in this case would be as a `good faith' exception to the exclusionary rule as enunciated in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In Leon, `the Supreme Court held that evidence obtained pursuant to a facially-valid search warrant, later found to be invalid, is admissible if the executing officers acted in good faith and in objectively reasonable reliance on the warrant.' United States v. Hove, 848 F.2d 137, 139 (9th Cir.1988). However, the Leon Court specifically noted four circumstances when it cannot be asserted that the officer is acting in `good faith' because `the officer will have no reasonable grounds for believing that the warrant was properly issued.' Leon, 468 U.S. at 923, 104 S.Ct. at 3420. One of these circumstances is when an officer relies `on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."' In its discussion of this circumstance, the Supreme Court stated that `"Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusion of others."' Leon, 468 U.S. at 915, 104 S.Ct. at 3416 (quoting Illinois v. *496 Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
"In Herrington v. State, 287 Ark. 228, 697 S.W.2d 899 (1985), the Arkansas Supreme Court was faced with a situation similar to the one at bar. In that case, the court held that the affidavit, which was the basis for the issuance of a search warrant, did not contain sufficient information to support a probable cause determination because it contained no reference to when the informant had seen marijuana growing in the defendant's home. Thus, the court held that the search in that case could not be justified under the `good faith' exception enunciated in Leon.

". . . .
"The affidavit in this case was `so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' since there was no reference at all in the affidavit as to when the informant saw the narcotics at the appellant's residence. An argument could be made that the `good faith' exception should be applicable in this instance because the affiant knew the time the informant saw the narcotics in the appellant's residence at the time he prepared the affidavit and at the time he executed the search warrant.
"`Leon does not extend, however, to allow the consideration of facts known only to an officer and not presented to a magistrate. The Leon test for good faith reliance is clearly an objective one and it is based solely on facts presented to the magistrate. Leon, 468 U.S. at 923, 104 S.Ct. at 3421. An obviously deficient affidavit cannot be cured by an officer's later testimony on his subjective intentions or knowledge. "Reviewing courts will not defer to a warrant based on an affidavit that does not `provide the magistrate with a substantial basis for determining the existence of probable cause.'" Leon, 468 U.S. at 915, 104 S.Ct. at 3416 (quoting Illinois v. Gates, 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).
"`Leon creates an exception to the exclusionary rule when officers have acted in reasonable reliance on the ruling of a judge or magistrate. The point is that officers who present a colorable showing of probable cause to a judicial officer ought to be able to rely on that officer's ruling in executing the warrant. [Citation omitted.] When the officers have not presented a colorable showing, and the warrant and affidavit on their face preclude reasonable reliance, the reasoning of Leon does not apply. To permit the total deficiency of the warrant and affidavit to be remedied by subsequent testimony concerning the subjective knowledge of the officer who sought the warrant would, we believe, unduly erode the protections of the fourth amendment.'
"Hove, 848 F.2d at 140.
"Here, the affidavit was deficient on its face and, although the affiant testified that he and the judge who issued the warrant talked about the time when the informant had observed the drugs at the [defendant's] house, he stated that he could not remember what he told the judge with regard to this matter. Thus, we cannot say that the affiant made a colorable showing of probable cause to the judge. Therefore, Leon does not apply here and the [defendant's] motion to suppress should have been granted."
Nelms, 568 So.2d at 387-89 (emphasis added).
The application of and rationale for the good-faith exception are particularly inappropriate where, as here, the officer is *497 executing a search warrant that depends on his own affidavit. It is "`disingenuous, after having gone to [a district judge] with the paltry showing seen here, to suggest, as the [State] suggests, that at bottom it was the [district judge] who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable.'" Ball v. State, 868 So.2d 474, 475 (Ala.Crim.App. 2003) (Cobb, J., dissenting) (quoting United States v. Zimmerman, 277 F.3d 426, 438 (3d Cir.2002)).
The State does not discuss  or even acknowledge  Thomas, Nelms, or Lewis. Instead, it relies on Harrelson v. State, 897 So.2d 1237 (Ala.Crim.App.2004). The State's reliance on Harrelson, however, is misplaced. In Harrelson, the search-warrant affidavit stated, in pertinent part, that "`[o]n August 9, 2002, information was received from a confidential informant indicating that Mr. Harrelson was responsible for [certain described] tire thefts,'" and that Harrelson "`had "tens of thousands of dollars worth" of [said stolen] property at his residence,'" 897 So.2d at 1238 (emphasis added). The warrant was issued that same day. 897 So.2d at 1239.
The Harrelson affidavit is distinguishable in that, unlike the affidavit in this case, the date of the informant's information was manifest. In other words, it was fairly inferable from the face of the affidavit that the stolen property was at Harrelson's residence on August 9, 2002  the benchmark date of the informant's tip. Indeed, the Court of Criminal Appeals so concluded:
"In this case, the affidavit provides that the informant said that Harrelson, at the time of the execution of the affidavit, had stolen goods stored in a building on his property, that is, the presence of the stolen goods was ongoing at the time of the execution of the affidavit."
Harrelson, 897 So.2d at 1239-40. Officer Flathman's affidavit, on the other hand, contains no comparable benchmark.
In short, the affidavit is facially defective within the framework of Thomas, Nelms, and Lewis, and, moreover, is "so lacking indicia of probable cause" that it does not satisfy the good-faith exception discussed in Nelms and Lewis. The affiant's testimony reveals nothing about when any of the relevant activities took place, thus "render[ing] official belief in [the existence of probable cause] entirely unreasonable." Nelms, 568 So.2d at 388.

III. Conclusion
Given the glaringly defective affidavit, reasonably effective counsel would have challenged the search warrant and the admission of evidence obtained as a result of its execution. In failing to do so, Green's trial counsel did not provide reasonably effective assistance. For these reasons, the judgment of the Court of Criminal Appeals is reversed, and the cause is remanded to that court for the entry of an appropriate order.
REVERSED AND REMANDED.
SEE, LYONS, STUART, and PARKER, JJ., concur.
SMITH, J., concurs specially.
BOLIN and MURDOCK, JJ., dissent.
COBB, C.J., recuses herself.
SMITH, Justice (concurring specially).
I concur with the main opinion. I write only to note that at the time a search warrant is challenged, the affiant, or additional witnesses produced by the affiant, may not recall the details of critical supplemental testimony that was provided to the judge or magistrate when the warrant was issued. Thus, in order to preserve *498 this supplemental testimony, Rule 3.9(a), Ala. R.Crim. P., provides that "[s]uch additional sworn examination shall be recorded verbatim by a court reporter, by recording equipment, or by other means. ..."
MURDOCK, Justice (dissenting).
For the reasons discussed below, I respectfully dissent.
I find the cases of Lewis v. State, 589 So.2d 758 (Ala.Crim.App.1991), Nelms v. State, 568 So.2d 384 (Ala.Crim.App.1990), and Thomas v. State, 353 So.2d 54 (Ala. Crim.App.1977), to be distinguishable from the present case. The problematic, past-tense verb usage in each of these cases was part of the informant's statement and was in reference to the occurrence at some unknown time in the past of the illegal activity itself or the informant's observation of that activity.[2] In contrast, in the present case the "past tense" reference is found only in the affiant's statement that "I have received" certain information from the informant. If this makes the affidavit deficient, then very few affidavits will be able to pass constitutional muster. Obviously, any time an affidavit describes information from an informant, it is of necessity information the affiant has received before signing the affidavit.
The real question is what is the information the affiant has received from the informant. According to the affidavit in this case, it is that, at the time the affidavit is signed, the defendant "is manufacturing and selling methamphetamine."
The main opinion disagrees with this understanding of the affidavit. It asserts that the present tense of the phrase "is manufacturing and selling" is qualified by the reference to prior activity in the clause "I have received information." I believe the converse is true. Moreover, the issuing court reasonably could have understood the converse to be true. By stating that "I have received information from a confidential informant that Jeff Green is manufacturing and selling methamphetamines inside of the residence and in the [adjacent] shed," the affidavit impliedly and necessarily states that the affiant has received information from the informant that speaks to the current state of affairs. Compare Harrelson v. State, 897 So.2d 1237, 1239 (Ala.Crim.App.2004) (finding that affiant's statement that "[i]nformation was also received from the informant indicating that the suspect stored some of the stolen property in an open-faced barn structure located approximately 1/4 mile east of the suspect's residence," speaks to the current state of affairs at the time of the execution of the affidavit).[3]
*499 In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court stated:
"`[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation.... It imports a seizure made under circumstances which warrant suspicion.' [Locke v. United States, 7 Cranch 339, 348 (1813)]....
"We also have recognized that affidavits `are normally drafted by nonlawyers in the midst and haste of a criminal investigation. ...' [United States v.] Ventresca, 380 U.S. 102, 108 [(1965) ].... The rigorous inquiry into the Spinelli [v. United States, 393 U.S. 410 (1969),] prongs and the complex superstructure of evidentiary and analytical rules that some have seen implicit in our Spinelli decision, cannot be reconciled with the fact that many warrants are  quite properly ...  issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings....
"Similarly, we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's `determination of probable cause should be paid great deference by reviewing courts.' Spinelli, supra, 393 U.S., at 419."
462 U.S. at 235-36, 103 S.Ct. 2317.
"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for ... conclud[ing]' that probable cause existed."
Gates, 462 U.S. at 238-39, 103 S.Ct. 2317 (emphasis added). As I read it, and considering it in its entirety, the affidavit at issue here gave the issuing court "substantial basis for ... concluding that probable cause existed." As an appellate court, this Court should defer to an issuing court's "common-sense" understanding of the wording of the affidavit presented to it.
Alternatively, even if the affidavit in this case did not provide a reasonable basis for the issuing court to conclude that it had probable cause to believe that the manufacture and sale of methamphetamine was ongoing at the time the affidavit was executed, I agree with the Court of Criminal Appeals that the evidence obtained pursuant to the resulting warrant should have been admissible under the "good-faith exception" to the exclusionary rule. Specifically, I cannot conclude that the affidavit is "so lacking [in] indicia of probable cause as to render official belief in its existence entirely unreasonable." Straughn v. State, 876 So.2d 492, 500 (Ala.Crim.App.2003)(citing United States v. Leon, 468 U.S. 897, 921, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).
Finally, I note that Lewis v. State, Nelms v. State, and Thomas v. State all were appeals of convictions in which the *500 question of the adequacy of the affidavit and resulting warrant was directly at issue. In the present case, we are not confronted with the direct question whether the affidavit and warrant pass constitutional muster; rather, the question is whether counsel's representation of the defendant was reasonable. Effective representation does not entitle a defendant to error-free representation. Saffold v. State, 570 So.2d 727, 731 (Ala.Crim.App.1990). "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (emphasis added). At a bare minimum, I cannot conclude, in light of what are at least substantial questions as discussed above, that counsel's representation of Green fell below constitutional standards because counsel failed to object to the validity of the warrant in the present case. See generally Strickland, 466 U.S. at 689, 104 S.Ct. 2052 ("Judicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").[4]
BOLIN, J., concurs.
NOTES
[1] The second prong is not at issue in this case; the State does not dispute that, if counsel did not provide reasonably effective assistance, Green was prejudiced.
[2] See Lewis, 589 So.2d at 759 (finding deficient an affidavit that stated merely that the informant advised the affiant that "`said informant had been at the above-described residence and observed a quantity of powder cocaine'" (emphasis added)); Nelms, 568 So.2d at 385 (rejecting an affidavit that stated merely that the informant "`stated to the affiant that they [sic] have seen Crack-Cocaine in the residence of'" the defendant (some emphasis omitted)); Thomas, 353 So.2d at 56 (finding that the affidavit "fail[ed] to show that the information received from the informant was fresh as opposed to being remote" where the affidavit stated merely that the informant "`had observed heroin being used and sold'" at the defendant's address (emphasis added)).
[3] The Harrelson court further explained:

"In this case, the affidavit provides that the informant said that Harrelson, at the time of the execution of the affidavit, had stolen goods stored in a building on his property, that is, the presence of the stolen goods was ongoing at the time of the execution of the affidavit. As opposed to absolutely no reference to the date or time, as was the problem in Nelms and Lewis, the affidavit in this case contained not only a general time frame, but also it provided that at the moment of the execution of the affidavit Harrelson was in possession of the stolen goods."
897 So.2d at 1239-40. The Harrelson court also stated:
"Finally, the plain meaning of the statement in the affidavit that reads, `The informant stated that Mr. Harrelson had air-conditioning units, ladders, tools, and other property at his residence that were thought to be stolen from Auburn University,' indicates that, as of the date of the affidavit, the stolen goods were at that point in time on Harrelson's property."
897 So.2d at 1242 (emphasis added).
[4] For the reasons discussed above, I also am not persuaded that counsel's conduct necessarily resulted in any prejudice to the defendant so as to meet the second prong of the Strickland test.