568 So.2d 384 (1990)
Tommie Lee NELMS
v.
STATE.
5 Div. 632.
Court of Criminal Appeals of Alabama.
April 12, 1990.
Rehearing Denied May 25, 1990.
Certiorari Denied September 14, 1990.
*385 C.S. Whittelsey of Whittelsey, Ray & Tipton, Opelika, for appellant.
Don Siegelman, Atty. Gen., and Robin Blevins, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 89-1348.
TYSON, Judge.
Tommie Lee Nelms, the appellant, was indicted for the unlawful possession of marijuana in the first degree, in violation of § 13A-12-213(a)(2), Code of Alabama 1975 (Supp.1989). The jury found him guilty as charged in the indictment and the trial judge sentenced him to 20 years' imprisonment in the penitentiary.
On December 3, 1988, the appellant's residence was searched by officers from the Auburn, Alabama, Police Department pursuant to a search warrant. The search was conducted with the assistance of a trained canine. During the search the officers found a plastic bag of marijuana and some Topps cigarette rolling papers in a dresser drawer in a bedroom. A purse found in this bedroom contained a Crown Royal bag with $1800 in $100 bills inside. Cocaine residue was found on the bills. A trash can in the kitchen contained several plastic sandwich bags which had cocaine residue on them and on which the corners of the bags had been cut out. Some inositol powder, which is commonly used to "cut" cocaine, was found on the kitchen counter.

I
The appellant contends that his motion to suppress should have been granted because, he argues, the affidavit supporting the warrant for the search of his residence was deficient. The affidavit, in pertinent part, reads as follows:
"And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: That within the last seventy-two hours a confidential police informant, who has provided information to the affiant in the past that led to an arrest, stated to the affiant that they have seen Crack-Cocaine in the residence of Tommie Lee Nelms, alias, located at 625 Westview Drive, Auburn, Lee County, Alabama." (State's and Defendant's Exhibit # 1.) (Emphasis added.)
*386 The affidavit in this case is deficient because it does not state when the drugs were seen by the informant at the appellant's residence. The words "within the last seventy-two hours" refer to when the informant told this information to the affiant, not to when the informant observed the narcotics in the appellant's residence. There is absolutely no reference to the date or time when the narcotics were observed by the informant. Thus, the affidavit was defective and was insufficient to support the issuance of the search warrant in this case. See Stikes v. State, 397 So.2d 178 (Ala.Crim.App.1980), cert. denied, 397 So.2d 183 (Ala.1981); Thomas v. State, 353 So.2d 54 (Ala.Crim.App.), cert. denied, 353 So.2d 59 (Ala.1977); Walker v. State, 49 Ala.App. 741, 275 So.2d 724, cert. denied, 290 Ala. 371, 275 So.2d 732 (1973). Accord, King v. State, 410 So.2d 586 (Fla.Dist.Ct. App.1982); Orr v. State, 382 So.2d 860 (Fla.Dist.Ct.App. 1980); People v. Siemieniec, 368 Mich. 405, 118 N.W.2d 430 (1962). Contra, Raymer v. State, 482 N.E.2d 253 (Ind.1985). See generally, Annot., Search Warrant: Sufficiency of Showing as to Time of Occurrence of Facts Relied On, 100 A.L.R. 525 (1965).
However, a defective affidavit may be cured by the admission of oral testimony. Griffith v. State, 386 So.2d 771 (Ala. Crim.App.), cert. denied, 386 So.2d 775 (Ala. 1980); Walker; Oliver v. State, 46 Ala.App. 118, 238 So.2d 916 (1970); Funches v. State, 53 Ala.App. 330, 299 So.2d 771, cert. denied, 293 Ala. 752, 299 So.2d 778 (1974), cert. denied, 419 U.S. 1114, 95 S.Ct. 793, 42 L.Ed.2d 813 (1975). Contra, Orr (Florida appellate court held that an affidavit cannot be supplemented by oral testimony to prove probable cause).
During the suppression hearing, the affiant was asked whether he told the judge, who issued the search warrant, any other information than what was contained in the affidavit. The affiant testified that the only other information that he gave the judge besides the information contained in the affidavit was that the informant had supplied him with information which had led to the arrest and conviction of two other defendants on drug charges. The affiant also stated that the phrase "within seventy-two hours" referred to in the affidavit was the time when the informant had talked to him. When he was asked whether there was any information referring to the time when the informant had seen cocaine in the appellant's residence, the affiant said, "No."
At this point, a discussion was held between the prosecutor, defense counsel, and the trial judge. The trial judge stated that he read the words "within the last seventytwo hours" to refer to when the informant talked to the affiant rather than when the informant saw the cocaine. The court then took a short recess. After the recess, the judge told defense counsel to argue his motion. At this time, the prosecutor asked to recall the affiant to the stand "to clear up one point." (R. 102.) Defense counsel objected, but the trial court allowed the affiant to give additional testimony.
The following excerpts from the record are the relevant portions of the affiant's additional testimony:
"BY MS. McCOLLUM:
"Q. Detective Murry, in your affidavit where it says that within the last seventy-two hours a confidential police informant, who has provided information to the affiant in the past that led to an arrest, stated to the affiant they had seen crack cocaine in the residenceDid the confidential informant state this to you within seventy-two hours?
"A. Yes, they did.
"Q. Okay. Did he also indicate to you when he had seen the crack cocaine in the residence?
"A. Yes, he did.
"Q. And when was that
"MR. WHITTELSEY: Objection
"THE COURT: Sustained, don't lead. On a critical matter such as this the witness needs to testify, not the lawyer.
"Q. What else did he tell you?
"... [Objection].
"Q. What did the informant tell you?
"A. The informant stated that on December the 2nd, the night of December *387 the 2nd, which was the night before I obtained the search warrant, that they had seen Mr. Nelms cutting up some crack cocaine in his kitchen. And it appeared to be a large amount
"... [Objection].
"Q. Now, when you prepared the search warrant, and typed in this paragraph that I read to you a few moments ago, what did you mean when you said within the last seventy-two hours?
"... [Objection].
"Q. What did you mean when you typed in that paragraph, what was your intention?
"A. The intention was, that within the past three days that I had received information from the informant and that drugs had been seen in the residence within the last three days, within the past three days.
"Q. Is that what you meant when you wrote this paragraph?
"A. Yes, ma'am
"... [Objection].
"Q. And that was what you meant?
"A. Yes, ma'am.
"Q. Okay. When you took this information to Judge Lane and you told him the supplemental information that you testified to earlier, is that what you meant at that time?
"A. Yes, ma'am.
"... [Objection].
"Q. And did he appear to understand it that way?
"... [Objection].
"Q. Did Judge Lane say anything to you?
"... [Objection].
"A. Yes.
"Q. What did he say?
"A. He, of course, asked me about the informant and prior knowledge, information, that the informant had given me.
"Q. Did he ask you anything about how long it had been since the informant had seen the crack cocaine in the residence?
"... [Objection].
"A. Yes, he did.
"Q. And what did you tell him?
"A. I don't recall exactly what I told him, but, uh
"... [Objection].
"Q. But you did have a discussion with him about it?
"A. Yes, I did.
"Q. And he did issue the warrant?
"A. Yes, he did." (R. 103-110.)
After defense counsel made his arguments on behalf of the motion to suppress, the trial judge denied the motion, stating:
"THE COURT: The Court has briefly looked at the cases that the Defense has cited. At best this warrant is inartfully worded and it is somewhat ambiguous. However it does make reference to a time." (R. 148.)
A review of the above-quoted portion of the record reveals that the affiant's oral testimony did not cure the deficiency in the affidavit. Although the prosecutor obviously realized the problem with the affidavit and attempted to rectify it by eliciting additional testimony from the affiant, she was unsuccessful in her attempt. The affiant testified as to what he intended to say in the affidavit, but he never testified as to what he told the judge concerning when the informant saw the cocaine at the appellant's residence. Although the affiant stated that he and the judge discussed this matter, he testified that he could not recall what he told him concerning when the informant observed the narcotics. This is insufficient, since the affiant could have told the judge that the informant saw the drugs at any time in the past.
Although the affiant testified at the suppression hearing that the informant told him he had observed the narcotics at the appellant's residence within the past three days, we cannot assume that this information was conveyed to the trial judge, particularly since the affiant could not recall what he told the judge in this regard. Therefore, the affidavit did not support a finding of probable cause and there was not sufficient oral testimony to cure the problem with the affidavit.
Thus, the only possible way to justify the admission of the evidence seized *388 pursuant to the search warrant in this case would be as a "good faith" exception to the exclusionary rule as enunciated in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In Leon, "the Supreme Court held that evidence obtained pursuant to a facially-valid search warrant, later found to be invalid, is admissible if the executing officers acted in good faith and in objectively reasonable reliance on the warrant." United States v. Hove, 848 F.2d 137, 139 (9th Cir.1988). However, the Leon Court specifically noted four circumstances when it cannot be asserted that the officer is acting in "good faith" because "the officer will have no reasonable grounds for believing that the warrant was properly issued." Leon, 468 U.S. at 923, 104 S.Ct. at 3420. One of these circumstances is when an officer relies "on a warrant based on an affidavit `so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " In its discussion of this circumstance, the Supreme Court stated that "`Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusion of others.'" Leon, 468 U.S. at 915, 104 S.Ct. at 3416 (quoting Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
In Herrington v. State, 287 Ark. 228, 697 S.W.2d 899 (1985), the Arkansas Supreme Court was faced with a situation similar to the one at bar. In that case, the court held that the affidavit, which was the basis for the issuance of a search warrant, did not contain sufficient information to support a probable cause determination because it contained no reference to when the informant had seen marijuana growing in the defendant's home. Thus, the court held that the search in that case could not be justified under the "good faith" exception enunciated in Leon.
However, in United States v. Anderson, 851 F.2d 727 (4th Cir.1988), the Fourth Circuit Court of Appeals, without any explanation, reached the opposite result. In Anderson, the court held that the "good faith" exception did apply even though the affidavit supporting the search warrant did not disclose the date of the crime or the date upon which the defendant had offered to sell a pistol to the informant. After our examination of these two differing results, we reach the same result as that reached by the Arkansas Supreme Court and find that the "good faith" exception to the exclusionary rule is not applicable in the situation before us. This is particularly true in light of the warning issued by the Fourth Circuit in a footnote in Anderson. There, the court stated that it wished to "emphasize that sloppily prepared or executed warrants directly affront the Fourth Amendment to the United States Constitution. While Leon was present here to rescue a defective warrant, judicial officers and policemen should exercise care to see their warrants and supporting affidavits are correct for the saving effect of Leon or other rescue operations will be by no means necessarily sufficient in another case." Anderson, 851 F.2d at 730.
The affidavit in this case was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," since there was no reference at all in the affidavit as to when the informant saw the narcotics at the appellant's residence. An argument could be made that the "good faith" exception should be applicable in this instance because the affiant knew the time the informant saw the narcotics in the appellant's residence at the time he prepared the affidavit and at the time he executed the search warrant.
"Leon does not extend, however, to allow the consideration of facts known only to an officer and not presented to a magistrate. The Leon test for good faith reliance is clearly an objective one and it is based solely on facts presented to the magistrate. Leon, 468 U.S. at 923, 104 S.Ct. at 3421. An obviously deficient affidavit cannot be cured by an officer's later testimony on his subjective intentions or knowledge. `Reviewing courts will not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable *389 cause.'" Leon, 468 U.S. at 915, 104 S.Ct. at 3416 (quoting Illinois v. Gates, 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

"Leon creates an exception to the exclusionary rule when officers have acted in reasonable reliance on the ruling of a judge or magistrate. The point is that officers who present a colorable showing of probable cause to a judicial officer ought to be able to rely on that officer's ruling in executing the warrant. [Citation omitted.] When the officers have not presented a colorable showing, and the warrant and affidavit on their face preclude reasonable reliance, the reasoning of Leon does not apply. To permit the total deficiency of the warrant and affidavit to be remedied by subsequent testimony concerning the subjective knowledge of the officer who sought the warrant would, we believe, unduly erode the protections of the fourth amendment."
Hove, 848 F.2d at 140.
Here, the affidavit was deficient on its face and, although the affiant testified that he and the judge who issued the warrant talked about the time when the informant had observed the drugs at the appellant's house, he stated that he could not remember what he told the judge with regard to this matter. Thus, we cannot say that the affiant made a colorable showing of probable cause to the judge. Therefore, Leon does not apply here and the appellant's motion to suppress should have been granted.
For the reasons shown, the judgment of the trial court is reversed and the cause is remanded to the trial court.
REVERSED AND REMANDED.
TAYLOR, P.J., and PATTERSON and McMILLAN, JJ., concur.
BOWEN, J., dissents with opinion.
BOWEN, Judge, dissenting.
The majority holds that "there was no reference at all in the affidavit as to when the informant saw the narcotics at the appellant's residence," 568 So.2d at 388 (emphasis added). I disagree.
There was, as the trial court pointed out, a "reference to a time." However, this reference was ambiguous because it was not clear whether the phrase "within the last seventy-two hours" alluded to the time the informant provided the information to the affiant or to the time when the informant observed the contraband. "A policeman's affidavit should not be judged as an entry in an essay contest," see Spinelli v. United States, 393 U.S. 410, 438, 89 S.Ct. 584, 600, 21 L.Ed.2d 637 (1969) (Fortas, J., dissenting), and this Court should not penalize police affiants for not being grammatical technicians any more than we penalize them for not being "legal technicians," see Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).
Although the majority is correct in concluding that "an obviously deficient affidavit cannot be cured by an officer's later testimony on his subjective intentions or knowledge," I cannot agree that a misplaced prepositional phrase renders the affidavit "obviously deficient." Although the affidavit is confusing, I believe the oral testimony of the affiant was capable of curing the ambiguity.
Here, the ambiguity and deficiency in the affidavit were cured by the affiant's testimony at the suppression hearing, which the trial judge obviously chose to believe. The affiant knew that the informant had seen cocaine in the residence "the night of December the 2nd, which was the night before [he] obtained the search warrant." The affiant testified that the issuing magistrate asked him "how long it had been since the informant had seen the crack cocaine in the residence." The affiant admitted that he did not "recall exactly" what he told the issuing magistrate in response to this question, "[b]ut [he] did have a discussion with him about it" and the magistrate "did issue the warrant."
Under the circumstances, I agree with the majority that "we cannot assume that this information [that the informant saw the contraband the night of December 2] *390 was conveyed" to the issuing magistrate. We can assume, however, that the affiant and the warrant magistrate discussed the question of staleness because the magistrate asked the affiant "how long it had been since the informant had seen the crack cocaine in the residence," and the affiant answered him. We can also assume that the magistrate was satisfied with the answerwhether it was "within the last seventy-two hours" or "yesterday, December 2"because he issued the warrant. These factual assumptions are at least sufficient to invoke the Leon "good faith" exception. See Massachusetts v. Sheppard, 468 U.S. 981, 990, 104 S.Ct. 3424, 3429, 82 L.Ed.2d 737 (1984) (when the issuing judge has been "alerted ... to the potential problems" and thereafter issues the warrant, the affiant-officer can rely on the judge's conclusion that the warrant is valid).
Based on the foregoing, I agree with the trial judge and dissent from the majority's suppression of the evidence seized pursuant to the search warrant.