KELLUM, Judge.
The appellant, Jerry McIntosh II, pleaded guilty to one count of unlawful possession of methamphetamine, a violation of § 13A-12-212, Ala.Code 1975. The trial court sentenced McIntosh to a term of 10 years’ imprisonment; the trial court split the sentence and ordered McIntosh to serve 15 months’ imprisonment followed by 5 years’ supervised probation. The trial court also ordered McIntosh to pay a $1,000 assessment pursuant to the Drug Demand Reduction Act, § 13A-12-280 et seq., $100 to the Forensic Science Trust Fund, an assessment to the crime victims’ compensation fund, and court costs.
Before pleading guilty, McIntosh filed a motion to suppress evidence seized from the search of his residence on the ground that the affidavit upon which the search warrant was issued was deficient. Specifically, McIntosh argued that the affidavit upon which the search warrant was issued was not based upon “fresh” information and, thus, did not establish probable cause.
At the hearing on the motion to suppress, the trial court considered the following evidence. On October 31, 2007, Deputy Ivan Bryant of the Lowndes County, Mississippi, Drug Task Force telephoned Officer Claude Michael Shackelford of the 24th Judicial Circuit Drug Task Force[1] to inform him that a confidential informant had told Deputy Bryant that McIntosh was manufacturing methamphetamine at his home in Vernon, Alabama. The confidential informant had told Deputy Bryant that McIntosh had a Styrofoam cooler underneath a camper behind a barn on McIntosh’s property and that McIntosh also had methamphetamine in his house. Deputy Bryant told Officer Shackelford that he had received the information from the confidential informant within the preceding 24 hours. After receiving this telephone call, Officer Shackelford prepared the following affidavit in support of his application for a search warrant of McIntosh’s property:
“Your affiant, as an Agent with the 24th Judicial Drug and Violence Crime Task Force and having served in that capacity for a total of one year, does hereby request issuance of a residential search warrant. Prior to serving with the 24th Judicial Drug and Violence Crime Task Force I served as Chief of Police in the City of Sulligent, Alabama for two years and as a police officer for the City of Sulligent for 9 years. I have numerous drug arrests and convictions *1144 in my career as a law enforcement officer.
“On 10-31-07 I received a call from Lowndes County narcotic Officer Ivan Bryant of a Jerry McIntosh manufacturing Methamphetamines at his residence and in a barn and camper behind his house in Vernon Alabama. The information came from a credible confidential paid informant who has [given] credible information in the past and [has] made numerous arrests with [sic]. [The confidential informant] advised that Jerry McIntosh and a guy named Robert has a Styrofoam cooler underneath a camper behind the barn and that Jerry McIntosh has Methamphetamines in his residence. The information is fresh within the last 24 hours.
“Also, I have received information from credible sources in the past that Jerry McIntosh is involved with the manufacture of Methamphetamines.
“Furthermore, based on the information obtained through my investigations, I believe there to be stored at [a specific address] in Vernon, Alabama and being described as a single story tan brick house a quantity of Methamphetamines, other illegal narcotics, drug paraphernalia, and chemicals and components used in the manufacture of Methamphet-amines.”
(Supp. C. 2.) At 10:20 p.m. on October 31, 2007, Officer Shackelford along with other members of law enforcement executed the search warrant on McIntosh’s residence during which they recovered the narcotics underlying McIntosh’s guilty-plea conviction.
Officer Shackelford testified that other officers within the drug task force had heard that McIntosh was manufacturing methamphetamine at his residence, but he explained that he had learned that information before talking with Deputy Bryant. Officer Shackelford also testified that he had worked with Deputy Bryant on numerous narcotics cases in the area and that Deputy Bryant had told Officer Shackelford that the informant from whom he received the information regarding McIntosh was reliable.
On cross-examination, Officer Shackel-ford said that he could not recall specifically asking Deputy Bryant about the “freshness” of the information he had received from the confidential informant; however, on re-direct examination, Officer Shackel-ford explained that, although he did not have an independent recollection of discussing the “freshness” issue, the entry in the affidavit — “[t]he information is fresh within the last 24 hours” — would have been recorded immediately after his conversation with Deputy Bryant. Officer Shackelford testified that he would not search a residence for narcotics unless he had received information regarding narcotics being present at the residence within a “fresh time period.” (R. 34.) Additionally, Officer Shackelford explained that he began working on the application for the search warrant as soon as he received the telephone call from Deputy Bryant. Nevertheless, Officer Shackelford did not know when the confidential informant had acquired the knowledge regarding McIntosh’s involvement with narcotics.
Officer Shackelford could not recall discussing with the magistrate who issued the search warrant any issue not included in the affidavit. He also could not remember being asked any questions regarding the affidavit when he submitted the application for the search warrant to the issuing magistrate.
T.R., the confidential informant who had provided the information regarding McIntosh to Deputy Bryant, also testified at the suppression hearing. T.R. explained that on October 31, 2007, she went over to *1145 McIntosh’s residence and overheard a conversation between McIntosh and two men, one named Robert and another Junior, about “wanting to cook dope.” (R. 44.) T.R. explained that they went outside behind a camper and McIntosh pointed to a cooler and indicated that they had everything they needed to manufacture the narcotic, but that he needed the man named Junior to actually “cook it for [McIntosh].” (R. 44.) T.R. also testified to seeing drugs while inside the house. According to T.R. she telephoned Deputy Bryant as soon as she left McIntosh’s residence.
After hearing arguments from the State and McIntosh regarding the freshness of the information included in the affidavit in support of the search warrant, the trial court denied McIntosh’s motion to suppress. McIntosh then pleaded guilty, but he specifically reserved the right to appeal as to whether the trial court had erred by denying his motion to suppress. This appeal followed.
On appeal, McIntosh argues the that the trial court erred in denying his motion to suppress. Specifically, McIntosh contends that the affidavit underlying the search warrant was constitutionally deficient on the ground that it did not include information regarding when the confidential informant learned the information she reported to Deputy Bryant.
The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures, and it provides that search warrants shall be issued only upon a finding of probable cause. In Ex parte Green, 15 So.3d 489 (Ala.2008), the Alabama Supreme Court explained:
“Thus, ‘[a] search warrant may only be issued upon a showing of probable cause that evidence or instrumentalities of a crime or contraband will be found in the place to be searched.’ United, States v. Gettel, 474 F.3d 1081, 1086 (8th Cir.2007). Moreover, ‘ “[sufficient evidence must be stated in the affidavit to support a finding of probable cause for issuing the search warrant,” and “[t]he affidavit must state specific facts or circumstances which support a finding of probable cause[;] otherwise the affidavit is faulty and the warrant may not issue.” ’ Ex parte Parker, 858 So.2d 941, 945 (Ala.2003) (quoting Alford v. State, 381 So.2d 203, 205 (Ala.Crim.App.1979)).
“‘A probable cause determination is made after considering the totality of the circumstances.’ Gettel, 474 F.3d at 1086. To pass constitutional muster, ‘the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued’ United States v. Greany, 929 F.2d 523, 524-25 (9th Cir.1991) (emphasis added). Thus, ‘[t]he police will ... encounter problems of “staleness” of their information if they delay too long in seeking a search warrant.’ United States v. Watson, 423 U.S. 411, 450 n. 14 (1976).”
15 So.3d at 492.
In arguing that the affidavit underlying the search warrant was constitutionally deficient, McIntosh relies on Lewis v. State, 589 So.2d 758 (Ala.Crim.App.1991), and Nelms v. State, 568 So.2d 384 (Ala.Crim. App.1990). In Green, a case that is factually similar to the one at hand and that also relies upon Lewis and Nelms, the Alabama Supreme Court addressed the same question and held that an affidavit in support of a search warrant that stated, in part, “I am Offficer] Thomas Flathman of the Dothan Police Department and I have received information from a confidential informant that Jeff Green is manufacturing and selling methamphetamine inside of the residence and in the shed beside of the *1146 residence” was insufficient to establish probable cause. The Court explained:
“All three cases cited by Green involved motions to suppress evidence of controlled substances discovered in the execution of search warrants supported by affidavits lacking information sufficient to determine whether the information provided to, and by, the affiant was current. In Thomas [v. State, 358 So.2d 54 (Ala.Crim.App.1977) ], heroin was found pursuant to a search warrant executed on March 14, 1973. Thomas, 353 So.2d at 55. One of the police officers who executed the warrant was the affiant, who had stated, in pertinent part:
“ ‘ “On February 23rd, 1973, a search warrant was served at 2624 Tempest Drive, Apartment H, residence of Marie Haley. A quantity of heroin was seized on this date. On the afternoon of March 6th, 1973, an undercover police officer purchased a quantity of heroin from Eric Rogers at 2624 Tempest Drive, Apartment H. On March 13th, 1973,1 received information from a reliable informant who has given me information over a period of the last 30 days which has led to narcotic cases being made with trials pending. This informant gave me information that he had observed heroin being used and sold at 2624 Tempest Drive, Apartment H, Birmingham, Alabama.” ’
“353 So.2d at 56 (emphasis added). In holding that the defendant’s motion to suppress the heroin found during the search should have been granted, the Court of Criminal Appeals stated:
“ ‘The affidavit is deficient because it fails to show that the information received from the informant was fresh as opposed to being remote.... The affidavit stated that the informant “had observed ” heroin being used and sold from the premises described. The affidavit does not state the date or the time the informant allegedly observed the heroin on the premises....
[[Image here]]
“ ‘The fact that heroin was previously seized on February 23, 1973, at 2624 Tempest Drive, Apartment H, did not establish probable cause to believe that heroin was on the premises three weeks later.
“‘Also, the fact that on March 6, 1973, an undercover police officer purchased a quantity of heroin from Eric Rogers on the premises did not establish probable cause to believe that a week later such narcotic would be still found thereon. Seven days is a considerable length of time in which to remove heroin from the premises or dispose of it in another fashion. Such makes for a stale warrant.’
“353 So.2d at 56 (emphasis added).
“The search warrant challenged in Lewis [v. State, 589 So.2d 758 (Ala.Crim. App.1991),] was based on an affidavit that stated, in pertinent part: ‘ “[WJithin the last seventy-two hours, a reliable, confidential informant advised this affi-ant that said informant had been at the above described residence and observed a quantity of powder cocaine.” ’ Lewis, 589 So.2d at 759 (emphasis added). In reversing the trial court’s denial of the defendant’s motion to suppress evidence of a controlled substance found during the search, the Court of Criminal Appeals explained that the affidavit was constitutionally ‘deficient, because it fail[ed] to refer to the date when the informant allegedly observed cocaine at the [defendant’s] residence.’ 589 So.2d at 759 (emphasis added).
“Similarly, in Nelms [v. State, 568 So.2d 384 (Ala.Crim.App.1990) ] a controlled substance was found in executing *1147 a search warrant obtained on the basis of an affidavit that stated, in pertinent part:
“ ‘ “And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: That within the last seventy-two hours a confidential police informant, who has provided information to the affiant in the past that led to an arrest, stated to the affiant that they [sic] have seen Crack-Cocaine in the residence of Tommie Lee Nelms, alias, located at 625 Westview Drive, Auburn, Lee County, Alabama.” ’
“Nelms, 568 So.2d at 385 (emphasis added in Nelms). In reversing the trial court’s denial of the defendant’s motion to suppress evidence of the controlled substance, the Court of Criminal Appeals stated:
“ ‘The affidavit in this case is [constitutionally] deficient because it does not state when the drugs were seen by the informant at the [defendant’s] residence. The words “within the last seventy-two hours” refer to when the informant told this information to the affiant, not to when the informant observed the narcotics in the [defendant’s] residence. There is absolutely no reference to the date or time when the narcotics were observed by the informant. Thus, the affidavit was defective and was insufficient to support the issuance of the search warrant in this case.’
“568 So.2d at 386 (emphasis added).
[[Image here]]
“The Court of Criminal Appeals has explained in regard to the phrase ‘had observed’ that such statements in affidavits evidencing past actions are ineffective. This is so, because the allegedly illegal activity “‘could have been any time in the past.” ’ Thomas, 353 So.2d at 56 (quoting Walker v. State, 49 Ala. App. 741, 743, 275 So.2d 724, 725-26 (Ala.Crim.App.1973)). When ‘ “[t]he informer [does] not tell the officer-affiant the date or time he allegedly observed the [activity] on the premises,”’ then ‘ “[t]here is nothing in the affidavit which hints of time except the use of the past tense in connection with the informant’s ... report to the affiant.” ’ 353 So.2d at 56 (quoting Walker, 49 Ala.App. at 743, 275 So.2d at 726)(emphasis added).
“Similarly, nothing in Officer Flath-man’s affidavit reveals when the tip from the informant was received or when the alleged activity was observed. The most that can be gained from that portion of the affidavit is that — at some indefinite time in the past — an anonymous individual allegedly learned of a methamphetamine operation involving Green at the address indicated on the search warrant. Because Officer Flathman’s affidavit contained no chronological reference in which to place the informant’s alleged observation of the methamphetamine operation, it afforded no basis on which to determine whether ‘the object of the search [was] probably on the premises to be searched at the time the warrant [was] issued.’ [United States v.] Greany, 929 F.2d [523] at 525 [ (9th Cir.1991) ].”
15 So.3d at 493-94.
Here, the affidavit underlying the search warrant does not include a reference to when the confidential informant observed the methamphetamine in McIntosh’s residence. As McIntosh correctly points out, the statement that “[t]he information is fresh within the last 24 hours” is ambiguous because it is unclear whether that statement refers to when the confidential informant learned the information or to when the confidential informant *1148 called Deputy Bryant. Like the affidavit in Green and those mentioned therein, the affidavit prepared by Officer Shackelford “afforded no basis on which to determine whether ‘the object of the search [was] probably on the premises to be searched at the time the warrant [was] issued.’ ” Green, 15 So.Bd at 494. Thus, it is not readily apparent from the face of the affidavit that probable cause sufficient to support a search warrant existed.
However, our inquiry does not end here; we are also required to look at what information the affiant offered to the magistrate who issued the search warrant. The Court in Green explained:
“Even if an affidavit is facially defective for the reasons just discussed, its deficiency may be cured by information an affiant supplied to the issuing authority in addition to the assertions in the affidavit. However, no such circumstance is presented in this case, because Officer Flathman testified at the hearing on Green’s Rule 32[, Ala. R.Crim. P.,] petition that he ‘[did]n’t recall’ telling the district judge who issued the warrant anything ‘[o]ther than what was on the four corners of the [search-warrant affidavit].’ In that respect, also, this case is on point with Nelms and Lewis.
“Both of those eases involved, as does this case, allegations that the supporting affidavits lacked a chronological context by which to assess the timeliness of the search warrant. Nelms, 568 So.2d at 386; Lewis, 589 So.2d at 759. In both cases, the State attempted to cure the deficiency of the affidavits with testimony of the affiants regarding facts they had orally communicated to the judges who issued the warrants. Nelms, 568 So.2d at 386-87, Lewis, 589 So.2d at 759. In both cases, as in this case, the affi-ants testified that they could not recall what they had told the issuing judge as to when the informant had observed the illegal activity. In both cases, the Court of Criminal Appeals held, contrary to the holding in its unpublished memorandum in this case, that such oral testimony is insufficient to cure the deficiency of a supporting affidavit.
15 So.3d at 495.
Although Officer Shackelford stated that he had discussed the freshness issue with Deputy Bryant and that he likely had included the phrase “[t]he information is fresh within the last 24 hours” in the affidavit because Deputy Bryant had indicated that the confidential informant had made her observations within the preceding 24 hours, he could not recall whether the issuing magistrate had asked him any questions regarding the information contained in the affidavit. According to Officer Shackelford: “I presented [the application for a search warrant] to [the magistrate] and he read it, and then he signed it.” (R. 29.) Officer Shackelford also could not recall whether he had told the magistrate about any facts not contained in the affidavit. Thus, Officer Shackelford’s inability to recall his discussions with the magistrate who issued the search warrant leads this Court to conclude that his testimony did not, and could not, cure the deficiencies in the affidavit.
Here, neither the facts contained in the affidavit nor the testimony regarding Officer Shackelford’s discussions with the issuing magistrate sufficiently established probable cause to support the issuance of a search warrant. Thus, given the Supreme Court’s holdings in Ex parte Green, we have no choice but to conclude that the trial court erred in denying McIntosh’s motion to suppress.
Based on the foregoing, McIntosh’s conviction is reversed and this case is remand *1149 ed for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WELCH, WINDOM, and MAIN, JJ., concur. WISE, P.J., concurs in the result.

. Lamar County is one of the counties included in the 24th Judicial Circuit.