WELCH, Judge,
dissenting (as substituted on denial of application for rehearing on December 18, 2015).
The majority affirms Richard Lamar Bolden’s conviction for trafficking in marijuana, a violation of § 13A-12-231, Ala. Code 1975. Bolden contends on appeal that the trial court erred when it denied his motion to suppress evidence seized from a residence on Eddins Road in Co-warts, as a result of what he asserts was an invalid search warrant. Bolden contends that the affidavit with which the police secured a search warrant did not contain sufficient probable cause to justify the issuance of the warrant. Specifically, he contends that the affidavit failed to assert that an illegal activity had been observed at the residence and failed to *749 assert when the confidential informant (“Cl”) allegedly observed a referenced assault rifle at the residence. Moreover, the testimony presented at the hearing on the motion to suppress and at trial failed to cure what I believe were defects in the affidavit. Therefore, I believe that the affidavit underlying' the search warrant was deficient and that the motion to suppress should have been granted. For the reasons below, I would reverse the trial court’s judgment; therefore, I respectfully dissent.
The following testimony was presented at the hearing on the motion to suppress and provides the sequence of events leading to the issuance of the search warrant.
Officer Bay Mock testified that on August 10, 2011, he executed a search warrant on a residence belonging to Bolden on Bruce Street in Dothan. As a result of the search, a pistol, money, drug paraphernalia, and illegal drugs were seized. However, Bolden was not present at the time of the search; therefore, a warrant of arrest for trafficking .in drugs and also another arrest warrant for drug possession were issued for Bolden.
Officer Mock stated that on August 11, 2011, he learned from a citizen, who was not a Cl, that at approximately 4:00 p.m. Bolden was seen driving a green Chevrolet Impala automobile. He also obtained information from a reliable Cl that Bolden was “known to frequent” a mobile home on Eddins Road in Cowarts believed to belong to Bolden. (R. 23.) Additionally, Officer Mock testified that on August 11, 2011, a reliable Cl stated that Bolden possessed an assault rifle with a high-capacity drum and magazine.[2] Although the Cl did not say that he saw the rifle at the Eddins Road residence, or when he last saw it, it was Officer Mock’s opinion that the relevance of the rifle was to establish that Bolden kept some of his belongings at the trailer on Eddins Road.
Officer Mock testified that Sgt. Jason Adkins and other police officers watched the Eddins Road residence for about three hours. A green Impala registered to a Kamaliah Bolden was parked in front of the Eddins Road residence. Shawnda Owens, Bolden’s codefendant, arrived and entered the trailer. After a couple of hours Owens and Bolden emerged from the trailer and entered Owens’s vehicle and drove away from the trailer. They were followed by police officers for about a mile and a half and then stopped by the police. Bol-den attempted to run from the police officers, but was quickly apprehended. Bol-den was arrested pursuant to the arrest warrant issued following the search of the Bruce Street residence. No drugs were found on Bolden or Owens or in the vehicle.
Following Bolden’s August 11, 2011, arrest, Officer Mock requested a search warrant for the Eddins Road residence “to find additional drug evidence and any evidence or materials related to drug activities.” (R. 8.) Officer Mock testified that he believed drug evidence would be found at the Eddins Road residence based on the information from the Cl as well as Mock’s own knowledge of Bolden “through the course of the Dothan, police’s narcotics investigation into him.” (R. 14.) Officer Mock further testified that “a large part of *750 the probable cause” justifying a search warrant “was [the] search at-Bruce Street the day before,” because “based on his training and experience as a narcotics officer,” he knew that drug traffickers “operate between residences and also different vehicles.” (R. 11, 17.) Thus, the alleged relevance of the rifle was to establish that Bolden kept his belongings at both the Bruce Street and Eddins Road residences — in other words, because the Cl said Bolden had a rifle and the rifle was not at Bruce Street, it must be at Bolden’s alleged second residence on Eddins Road.
“Q. [The prosecutor:] And regarding the assault rifle that Mr. Wadsworth[, defense attorney,] asked you about, you put that in there because in your training and experience you know traffickers to operate between different residences? “A. [Officer Mock:] That’s correct.
“Q. And having not found that at the one residence off of Bruce Street, you believed it could be at the Eddins home as well?
“A. That’s correct.
“Q. Along with the drug evidence?
“A. Yes.”
(R. 15.) Nevertheless, it was Officer Mock’s belief that, “irrespective of the gun information,” there was “probable cause regarding drug items being in that [Ed-dins Road] home based on the information from the confidential informant as well as [his] own independent investigation and information that the police put together.” (R. 24.) What “the police put together” is set forth in the affidavit below.
Officer Ray Mock submitted the following affidavit seeking a search warrant for the residence on Eddins Road.
“Before me, [the judge] the undersigned authority, personally appeared Investigator Ray Mock of the Dothan Police Department, who being by me first duly sworn, deposes and says he has reason to believe that located at — Eddins Road, lot -, Cowarts, Alabama, a mobile home with tax stamp -, there is now being concealed certain drugs. Cocaine, Marihuana, which is illegally kept, used, and/or sold. Investigator Mock also believes that other evidence of illegal drug activity and weapons used in the drug trade are being kept in said residence. The following facts tend to establish ths foregoing grounds for issuance of a Search Warrant are as follows;
“I am Investigator Ray Mock of the Dothan Police Department’s Vice/Intelligence Division. On 8-10-2011, at approximately 1945 hours, I along with other members of the Dothan Vice Unit executed a search warrant at-Bruce Street. The warrant was obtained from information given by a reliable and confidential informant that Richard Bolden, a.k.a. ‘Gambino,’ was keeping Cocaine in that residence. During the search of the residence, I recovered over 28 grams of off-white powder and compressed off-white powder, which field tested positive for the presence of Cocaine. I also recovered 1 7/8 ounces of green plant material I believed to be marihuana, $1,554.00 in U.S. currency, a Hi-Point Semi-automatic pistol, and other packaging materials.
“Bolden’s live-in girlfriend, Tabitha Walker, was charged with Trafficking in Cocaine and Possession of Marihuana, 1st degree. Bolden was not at the residence at the time of the search warrant and did not return. I obtained arrest warrants for him on today’s date, 8 — 11— 2011, charging him with Trafficking in Cocaine, and Possession of Marihuana, 1st degree.
“At about 1600 hours today I spoke with a confidential source who told me that Bolden was seen driving a dark green Chevrolet Impala. The source *751 did not have any other information on Bolden’s whereabouts.
“At about 1700 hours today, SGT Jason Adkins spoke with a reliable and confidential informant (Cl) who has given information in the past that proved to be true and correct. The Cl told SGT Adkins that Bolden had another residence on Eddins Road in Cowarts, Alabama. The Cl gave SGT Adkins directions to the residence which the Cl stated was a mobile home. SGT Adkins drove to Eddins Road and located the mobile home at — Eddins Road, lot -. He also observed a dark green Chevrolet Impala parked in the yard with a Georgia license plate. SGT Adkins, Investigator David Saxon, Investigator Jon Givens, Investigator Taiwan Truitt, and I began surveillance of the home and the car.
“At about 1800 hours a black 2001 Ford Focus stopped at the residence and Shawanda [sic] Owens (d.o.b. 8-2-1977) exited the car. She walked inside the mobile home and closed the door behind her.
“At about 2000 hours, SGT Adkins observed Bolden and Owens exit the mobile home and get into the Ford Focus. Bolden sat in the front passenger seat and the female sat in the driver’s seat. SGT Adkins followed the car away from the residence and initiated a traffic stop in the 700 block of Falcon Drive. The car stopped and Bolden got out of the car and attempted to run away. After a short foot pursuit Bolden was apprehended.
“Investigator Givens and CPL Jeff Arnold responded back to the mobile home and attempted to make contact with anyone on the inside. No one would respond to the officers. CPL Arnold ran the tag on the Impala through dispatch and found it registered to Ka-maliah Bolden of Blakely, Georgia. Investigator Givens told me that the tax stamp on the mobile home had the serial number,-.
“I have served in the Vice/Narcotics unit since May, 2008. Since then I have received training in Basic Narcotics Investigations at the Regional Counter-drug Training Center in Merid[i]an Mississippi, spoken with and learned from narcotics investigators with more and/or different experiences, and spoken with reliable and confidential informants involved with the illegal drug trade. I have also been involved in federal drug investigations with the FBI and DEA. As a result of this training and experience, I know that illegal drug traffickers take many steps to disguise their business and to hide their drugs and cash proceeds. It is common for drug traffickers to keep their money and drugs separated, many times at different residences, it is also common for drug traffickers to keep written records of their transactions (drug ledgers).
“I believe that Richard Bolden is keeping illegal drugs, U.S. currency, and drug ledgers at the mobile home located at — Eddins Road, lot -, Cowarts Alabama, with tax stamp serial number
“I have also spoken with a reliable and confidential informant (Cl) who has given information in the past that proved to be true and correct. Today, this Cl told me that Bolden possesses an assault rifle with a high capacity drum magazine. This rifle was not found in the residence at-Bruce Street. I believe this rifle is inside the residence at — Eddins Road, lot -, Cowarts Alabama, with tax stamp serial number 047569.
“Affiant shows [t]hat based on the above and foregoing facts and informa *752 tion, Affiant has probable cause to believe that the above-described property is concealed upon the aforesaid premises and is subject to seizure and makes this affidavit so that a warrant may issue to search the said premises.”
(CR. 150-51.)
There was no assertion from Officer Mock that anyone had stated that drugs were seen — at any time — at the Eddins Road residence or that any illegal activity was ever observed at that location. Moreover, regarding the rifle, Officer Mock testified that his affidavit did not include, nor did he have, information confirming when and where the Cl saw Bolden in possession of the assault rifle. Officer Mock could not say how far in the past that observation might have been, but it was Mock’s opinion that “[i]t was recent enough that the Cl was concerned enough to volunteer that information.” (R. 23.)
The testimony presented at trial did not alter or enhance what was presented at the hearing regarding probable cause for the search warrant.
“This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute.” State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004) (citing State v. Hill, 690 So.2d 1201, 1203 (Ala.1996), and State v. Otwell, 733 So.2d 960, 952 (Ala.Crim.App.1999)).
“1 “A search warrant may only be issued upon a showing of probable cause that evidence or instrumentalities of a crime or contraband will be found in the place to be searched.” United States v. Gettel, 474 F.3d 1081, 1086 (8th Cir.2007). Moreover, “ ‘[sufficient evidence must be stated in the affidavit to support a finding of probable cause for issuing the search warrant,’ and ‘[t]he affidavit must state specific facts or circumstances which support a finding of probable cause[;] otherwise the affidavit is faulty and the warrant may not issue.’ ” Ex parte Parker, 858 So.2d 941, 945 (Ala.2003)(quoting Alford v. State, 381 So.2d 203, 205 (Ala.Crim.App.1979)).
“ ‘ “A probable cause determination is made after considering the totality of the circumstances.” Gettel, 474 F.3d at 1086. To pass constitutional muster, “the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued.” United States v. Greany, 929 F.2d 523, 524-25 (9th Cir.1991) (emphasis added).’ ”
McIntosh v. State, 64 So.3d 1142, 1145 (Ala.Crim.App.2010) (quoting Ex parte Green, 15 So.3d 489, 492 (Ala.2008)).
“Affidavits may not be ‘purely concluso-ry’ but must detail the ‘ “underlying circumstances” ’ in order to support a determination that probable cause exists. United States v. Ventresca, 380 U.S. 102, 108-09, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Of course, in determining whether there is a fair probability that evidence of a crime will be found in the place to be searched, the magistrate may draw ‘reasonable inferences’ from the information given in the search warrant application. Illinois v. Gates, 462 U.S. 213, 240, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Such inferences, however, must be based on specific facts and cannot be the result of broad generalizations. Thus, ‘[ajlthough common sense and experience inform the inferences reasonably to be drawn from the facts, broad generalizations do not alone establish probable cause_ [GJeneral-izations do not substitute for facts and investigation.’ State v. Thein, 138 *753 Wash.2d 133, 977 P.2d 582, 589-90 (1999). In sum, an affidavit that details only the facts showing that the accused, had been involved in selling drugs, will never allow a reasonable inference that those drugs are stored at the accused’s residence.”
State v. Vasquez-Marquez, 204 P.3d 178, 180 (Utah Ct.App.2009) (emphasis added). Moreover, “ ‘ “[p]robable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched.’”” State v. Vasquez-Marquez, 204 P.3d at 179 (quoting State v. Dable, 81 P.3d 783 (Utah Ct.App.2003), quoting in turn United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir.2000)). “A reviewing court need determine only that a magistrate or judge had a ‘substantial basis’ for concluding that probable cause existed.” Jenkins v. State, 26 So.3d 458, 461 (Ala.Crim.App.2007), citing Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Sullivan v. State, 651 So.2d 1138 (Ala.Crim.App.1994); McCray v. State, 501 So.2d 532 (Ala.Crim.App.1986).
I quote extensively from McIntosh, which sets forth prior rulings from this Court confirming that in order to establish probable cause to search, the supporting affidavit or oral testimony presented to the magistrate must reliably assert a belief based on the totality of the circumstances that the object of the search is at the location to be searched and that the information is not based on a remote observation.
“In arguing that the affidavit underlying the search warrant was constitutionally deficient, McIntosh relies on Lewis v. State, 589 So.2d 758 (Ala.Crim.App.1991), and Nelms v. State, 568 So.2d 384 (Ala.Crim.App.1990). In [Ex parte] Greenl, 15 So.3d 489, 492 (Ala.2008) ], a case that is factually similar to the one at hand and that also relies upon Leíais and Nelms, the Alabama Supreme Court addressed the same question and held that an affidavit in support of a search warrant that stated, in part, ‘I am Off[icer] Thomas Flathman of the Do-than Police Department and I have received information from a confidential informant that Jeff Green is manufacturing and selling methamphetamine inside of the residence and in the shed beside of the' residence’ was insufficient to establish probable'cause. The Court explained:
“ All three cases cited by Green involved motions to suppress evidence of controlled substances discovered in the execution of search warrants supported by affidavits lacking information sufficient to determine whether the information provided to, and by, the affiant was current. In Thomas [v. State, 353 So.2d 54 (Ala.Crim.App.1977) ], heroin was found pursuant to a search warrant executed on March 14, 1973. Thomas, 353 So.2d at 55. One of the police officers who executed the warrant was the affiant, who had stated, in pertinent part:
“‘“‘On February 23rd, 1973, a search warrant was served at 2624 Tempest Drive, Apartment H, residence' of Marie Haley. A quantity of heroin was seized on this date. On the afternoon of March 6th, 1973, an undercover police officer purchased a quantity of heroin from Eric Rogers at 2624 Tempest Drive, Apartment H, On March 13th, 1973, I received information from a reliable informant who has given me information over a period of the last 30 days which has led to narcotic cases being made with trials pending. This informant gave me information that he had observed heroin being used and sold at 2624 Tem *754 pest Drive, Apartment H, Birmingham, Alabama.’ ”
“‘353 So.2d at 56 (emphasis added). In holding that the defendant’s motion to suppress the heroin found during the search should have been granted, the Court of Criminal Appeals stated:
“ ‘ “The affidavit is deficient because it fails to show that the information received from the informant was fresh as opposed to being remote .... The affidavit stated that the informant ‘had observed’ heroin being used and sold from the premises described. The affidavit does not state the date or the time the informant allegedly observed the heroin on the premises....
[[Image here]]
“ ‘ “The fact that heroin was previously seized on February 23, 1973, at 2624 Tempest Drive, Apartment H, did not establish probable cause to believe that heroin was on the premises three weeks later.
“ ‘ “Also, the fact that on March 6, 1973, an undercover police officer purchased a quantity of heroin from Eric Rogers on the premises did not establish probable cause to believe that a week later such narcotic would be still found thereon. Seven days is a considerable length of time in which to remove heroin from the premises or dispose of it in another fashion. Such makes for a stale warrant.”
“ ‘353 So.2d at 56 (emphasis added).
“ ‘The search warrant challenged in Lewis[ v. State, 589 So.2d 758 (Ala.Crim.App.1991),] was based on an affidavit that stated, in pertinent part: “ ‘[W]ithin the last seventy-two hours, a reliable, confidential informant advised this affiant that said informant had been at the above described residence and observed a quantity of powder cocaine.’” Lewis, 589 So.2d at 759 (emphasis added). In reversing the trial court’s denial of the defendant’s motion to suppress evidence of a controlled substance found during the search, the Court of Criminal Appeals explained that the affidavit was constitutionally “deficient, because it fail[ed] to refer to the date when the informant allegedly observed cocaine at the [defendant’s] residence.” 589 So.2d at 759 (emphasis added).
“ ‘Similarly, in Nelms[ v. State, 568 So.2d 384 (Ala.Crim.App.1990) ] a controlled substance was found in executing a search warrant obtained on the basis of an affidavit that stated, in pertinent part:
“““And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: That within the last seventy-two hours a confidential police informant, who has provided information to the affiant in the past that led to an arrest, stated to the affiant that they [sic] have seen Craclir-Cocaine in the residence of Tommie Lee Nelms, alias, located at 625 Westview Drive, Auburn, Lee County, Alabama.’ ”
“ Nelms, 568 So.2d at 385 (emphasis added in Nelms). In reversing the trial court’s denial of the defendant’s motion to suppress evidence of the controlled substance, the Court of Criminal Appeals stated:
“‘“The affidavit in this case is [constitutionally] deficient because it does not state when the drugs were seen by the informant at the [defendant’s] residence. The words “within the last seventy-two hours’ refer to when the informant told this information to the affiant, not to when the informant observed the narcotics in the [defendant’s] resi *755 dence. There is absolutely no reference to the date or time nihen the narcotics were observed by the informant. Thus, the affidavit was defective and was insufficient to support the issuance of the search warrant in this case.”
“ ‘568 So.2d at 386 (emphasis added).

t( l

“ ‘The Court of Criminal Appeals has explained in regard to the phrase “had observed” that such statements in affidavits evidencing past actions are ineffective. This is so, because the allegedly illegal activity “‘could have been any time in the past.’” Thomas, 353 So.2d at 56 (quoting Walker v. State, 49 Ala.App. 741, 743, 275 So.2d 724, 725-26 (Ala.Crim.App.1973)). When “ ‘[t]he informer [does] not tell the officer-affiant the date or time he allegedly observed the [activity] on the premises,’ ” then “ ‘[t]here is nothing in the affidavit which hints of time except the use of the past tense in connection with the informant’s ... report to the affiant.’ ” 353 So.2d at 56 (quoting Walker, 49 Ala.App. at 743, 275 So.2d at 726) (emphasis added).
“ ‘Similarly, nothing in Officer Flathman’s affidavit reveals when the tip from the informant was received or when the alleged activity was observed. The most that can be gained from that portion of the affidavit is that — at some indefinite time in the past — an anonymous individual allegedly learned of a methamphetamine operation involving Green at the address indicated on the search warrant. Because Officer Flathman’s affidavit contained no chronological reference in which to place the informant’s alleged observation of the'methamphetamine operation, it afforded no basis on which to determine whether “the object- of the search [was] probably on the premises to be searched at the time the warrant [was] issued.” [United States v.] Greany, 929 F.2d [523] at 525 [ (9th Cir.1991) ].’ ”
McIntosh v. State, 64 So.3d 1-142, 1145-1147 (Ala.Crim.App.2010).
In Bolden’s case, if the assault rifle was intended to create, a nexus between Bolden and the Eddins Road residence, it failed. There was no evidence whatsoever regarding when or where the Cl last saw Bolden with the rifle. As in the cases above, this information is necessary to assure that the information on which the search warrant was issued is current. Moreover, and- importantly, there was no assertion whatsoever regarding the presence of drugs or criminal activity at the Eddins Road residence. Like the fatal flaws in the affidavits discussed in McIntosh, Officer Mock’s affidavit provided “no reference to the date or time when the narcotics were observed” at the Eddins Road residence. Like the affidavits in the cases cited in McIntosh, the affidavit in Bolden’s case does not provide probable cause to issue a search warrant.
Moreover, the affidavit overwhelmingly presents only Officer Mock’s pure speculation that illegal drugs were probably in the trailer on Eddins Road at the time the warrant was issued. The affidavit essentially presented conclusions based on Officer Mock’s experience as a narcotics officer. Officer Mock asserted that because he was well trained in the detection of narcotics, he knew that illegal drug traffickers disguise their business and in doing so it is common for drug traffickers to keep their money and drugs at different residences. With this knowledge Officer Mock formed the opinion that Bolden had separated his drugs and money and was keeping illegal drugs at the Eddins Road residence. Furthermore, Officer Mock *756 supported this opinion with his additional opinion that the absence of a rifle from the Bruce Street residence meant that Bolden was keeping some of his belongings, including the rifle and drugs at the Eddins Road residence. None of those opinions is supported by facts presented to the officer before seeking the search warrant.
Morever, I do not believe that the good-faith exception applies.
In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court established the “good-faith exception” to the warrant requirement. “The good faith exception provides that when officers acting in good faith, that is, in objectively reasonable reliance on a warrant issued by a neutral, detached magistrate, conduct a search and the warrant is found to be invalid, the evidence need not be excluded.” Rivers v. State, 695 So.2d 260, 262 (Ala.Crim.App.1997).
Initially, I respectfully disagree with the special writing concurring in the result where it states that Leon provides that the standard of review applicable in Bolden’s case is whether “ ‘ “thoughtful and competent judges [can disagree] as to the existence of probable cause” ’ ” (quoting United States v. Butler, 763 F.2d 11, 14 (1st Cir.1985)) and where, as here, disagreement does exist, the trial court’s finding of probable cause is not error and does not warrant reversal. Leon, 468 U.S. at 926. The special writing concludes that because this Court is divided on the question of probable cause, it is thus established that “Officer Mock had an ‘objectively reasonable belief in the existence of probable cause’” and, consequently, the good-faith exception applies. (Joiner, J., concurring in the result.) I disagree for the reasons below.
Unlike those in the present case, the facts in Leon reflect that Leon’s warrant was issued after numerous parties participated in an extensive investigation, and particularly the staleness of the information supporting the warrant was considered. The Leon Court stated:
“In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. Only respondent Leon has contended that no reasonably well trained police officer could have believed that there existed probable cause to search his house; significantly, the other respondents advance no comparable argument. Officer Rombach’s application for a warrant clearly was supported by much more than a ‘bare bones’ affidavit. The affidavit related the results of an extensive investigation and, as the opinions of the divided panel of the Court of Appeals make clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers’ reliance on the magistrate’s determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate.”
468 U.S. at 926 (emphasis added). In my view, the passage quoted above is not a holding or the creation of a standard of review, but rather a comment made by the Leon Court when summarizing the facts of that case. In the emphasized portion, Justice White, who authored the Leon opinion, recognizes that the appellate review conducted by the three-judge panel for Court of Appeals for the Ninth Circuit included a *757 dissent.[3] This comment acknowledges that reviewing jurists may disagree on what constitutes probable cause. Thus, a “disagreement among thoughtful and competent judges” reviewing the issue is not an affirmation that the trial court properly ruled that probable cause exists, nor does a disagreement regarding probable cause attest that the executing officer acted in good faith. If that were so, then every non-unanimous decision by this Court regarding the existence of probable cause would be tantamount to a finding of good faith. In other words, so long as a disagreement among the members of the reviewing court exists, the good-faith exception to the warrant requirement must be found applicable; thus, only a unanimous appellate court could reverse a trial court’s denial of a motion to suppress where probable cause was contested. I do not believe that this is what Leon intended. For the same reasons I concluded in my probable-cause analysis above, nothing presented to the judge or magistrate in Bolden’s case provided a substantial basis to conclude that probable cause existed.
Thus, I come to the four circumstances presented in Leon in which an officer’s objective reasonable reliance on a facially valid warrant, i.e., his or her good-faith reliance on the warrant, prohibits the admission of evidence seized pursuant to that warrant. Those exceptions are:
“(1) when the magistrate or judge relies on information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) when the magistrate wholly abandons his judicial role and fails to act in a neutral and detached manner; (3) when the warrant is based on an affidavit so lacking an indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.”
Bailey v. State, 67 So.3d 145, 150 (Ala.Crim.App.2009).
In Bolden’s case, Leon’s first and second circumstance rendering the good-faith exception inapplicable have no application because neither Officer Mock nor the affi-ant presented false information to the judge, nor did the judge issuing the warrant abandon his judicial role and fail to act in a neutral and detached manner. Leon’s fourth circumstance concerns the faee of the warrant, which is not at issue because the warrant itself appears facially valid. But see, United States v. Zimmerman, 277 F.3d 426, 438 (3d Cir.2002) (commenting that “where the affiant is also one of the executing officers, it is somewhat disingenuous, after having gone to the magistrate with the paltry showing seen here, to suggest, as the government suggests, that at bottom it was the magistrate who made the error and the search and seizure are insulated because the officer’s reliance on that error was objectively reasonable.”).
It is my opinion that it is Leon’s third circumstance, i.e., when the warrant is based on an affidavit so lacking an indicia of probable cause as to render official belief in its existence entirely unreasonable, that renders the good-faith exception inapplicable. As previously stated,
“Probable cause must be determined by an analysis of ‘the totality of the circumstances.’ Illinois v. Gates, 462 *758 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In determining whether to issue a search warrant, the issuing magistrate is to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the person supplying the information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates; Hyde v. State, 534 So.2d 1132 (Ala.Cr.App.1988). Our duty as a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Illinois v. Gates; McCray v. State, 501 So.2d 532 (Ala.Cr.App.1986); Hyde v. State.
Marks v. State, 575 So.2d 611, 614-15 (Ala.Crim.App.1990).
As I stated when explaining that in my opinion there was no probable cause, the circumstances before the judge or magistrate in this case did not establish a fair probability that contraband or evidence of a crime would be found at the Eddins Road address. The affidavit, which is set out in its entirety above, presented no facts, but only Officer Mock’s speculations, conclusions, and opinions, regarding the presence of drugs or criminal activity at the Eddins Road residence. Moreover, the affidavit lacked assertions establishing how current any of the information was.
For these reasons, I believe the trial court erroneously denied Bolden’s motion to suppress the evidence law-enforcement officers seized pursuant to the search warrant. Accordingly, I would reverse the trial court’s judgment and remand this case for further proceedings. Therefore, I must respectfully dissent.

. I know of no law in Alabama criminalizing possession of such a rifle or drum magazine. See David B. Kopel, The History of Firearm Magazines & Magazine Prohibitions, 78 Alb. L.Rev. 849, 867 (2015), discussing bans in other jurisdictions. Moreover, Bolden's apparent status as a convicted felon prohibited from possessing a firearm was rightly not discussed in the lower court or on appeal because that fact would not establish probable cause for the search for drugs in this case.

. United States of America v. Leon (No. 82-1093, January 19, 1983). This opinion was not reported in Federal Reporter.